Clemmitt *et al. v.* Watson.

Filed December 10, 1895.

---

No. 1,595.

## Clemmitt et al. *v.* Watson.

Conspiracy.—*Master and Servant.—Damages.—Agreement of Part of Employes to Quit Work,*—A mere agreement by two or more employes of a coal mine to quit work at the mine if a certain employe is not discharged, and a quitting on the employer's refusal to discharge, by reason of which work at the mine is stopped, and such employe thrown out of employment, does not constitute a conspiracy rendering them liable to such employe for being thrown out of work.

Same.—*Who are Conspirators.*—One person is not liable as a conspirator with another, where the latter does an act without the former's knowledge or consent, simply because he thinks such former person wishes it done.

From the Greene Circuit Court.

*Davis & Moffett* and *N. R. Hysel,* for appellants.

*J. S. Bays*, for appellee.

GAVIN, J.—Appellee sued to recover damages for an alleged wrongful conspiracy, whereby he was, through threats, etc., driven from his employment, etc. So far as objections are made to the complaint it may be good.

Counsel have not adverted to the fact that in Indiana no conspiracy is a crime, except it be to commit a felony. There was a law by which the acts charged against appellants would have been criminal. R. S. 1881, section 2126. But this was repealed by the acts of 1889. Elliott Supp., section 357.

In England and Ireland the doctrine of conspiracies has been, in many cases, pushed to the utmost verge, some courts holding it to be a criminal conspiracy for two or more workmen to combine together to get their wages raised, or for two or more to combine to prevent the payment of rent due or the fulfillment of other personal civil obligations. *King* v. *Journeymen Tailors*, 8 Mod. 11 ; *Reg.* v. *Parnell*, 14 Cox C. C. 514.

These decisions were largely due to a general feeling of the necessity of repression caused in England by dread of consequences of trades-union organizations, and in Ireland by the agitations of Parnell and others. The tendency both of legislation and decisions in England has, in later years, been toward a modification of the extreme and rigorous doctrines of conspiracy announced by earlier judges.

In the United States, in many jurisdictions, both Federal and State, the common law conspiracy is still a crime, and the ordinary legal consequences, both civil and criminal, follow its commission.

Some of these decisions in this country approve of the broad and far-reaching definitions of conspiracy which were advanced by the English and Irish courts.

*State* v. *Donaldson*, (3 Vr.) 32 N. J. L. 151; *State* v. *Burnham*, 15 N. H. 396; *Mogul Steamship Co.* v. *McGregor*, L. R., 1892, A. C. 25; *Walsby* v. *Anley*, 7 Jur. (1861) N. S. 465; Law Qr'ly. Rev., Vol. 6, pp. 129, 247, 363.

There is much confusion in the numerous efforts' to determine the proper limits of criminal conspiracy at common law. For the purposes of this case it is unnecessary that this vexed problem be solved.

In the case of *Severinghaus* v. *Beckman*, 9 Ind. App. 388, we held that where a "conspiracy is alleged to have been formed to commit an act which, if done by one alone, would be an actionable wrong, or where the conspiracy charged is not, by law, a crime, then the conspiracy is not the *gravamen* of the action, and the tort, for the accomplishment of which it was formed, must be well pleaded" in order to constitute a cause of action.

In its instructions, we are of the opinion that the court erred. At the request of the appellee, the court, after instructing the jury that each defendant had a right, acting independently, to quit work, says:

"1. But if you find from the evidence that the defendants, or any two or more of them, combined and agreed among themselves to quit work at the coal mine, and thus stop the working of the mine unless the plaintiff was discharged from work, and that by reason of such agreement and the acts of the defendants, or any two or more of the defendants pursuant to such agreement, the plaintiff was thrown out of work and thereby sustained any damage, you should find for the plaintiff.

"2. If you find from the evidence that the defendants, or two or more of the defendants, agreed among themselves not to work in the coal mine unless the plaintiff was thrown out of employment at the coal

mine, and that the company refused to throw the plaintiff out of employment, and that the defendants, or two or more of them, quit work at said mine pursuant to such agreement, and that by reason of such agreement and said defendants quitting work, the mine stopped running and plaintiff was thereby thrown out of employment, then you should find for the plaintiff."

By the first, appellants are held liable if they "combined and agreed among themselves to quit work at the coal mine, and thus stop the working of the mine unless the plaintiff was discharged from work," and by reason thereof and of their acts he was thrown out of work. By the second, appellants are held liable if they agreed among themselves not to work with appellee, and upon the company's refusing to discharge him they quit, and by reason thereof the mine was stopped and he thrown out of work. These charges do not require the existence of malice, threats, intimidation or violence. There is, under them, no duty, by contract or otherwise, resting on appellants to continue to work, nor any duty, by contract or otherwise, resting on the employer to continue appellee in his service. Under these instructions nothing more is necessary than a mere agreement among themselves to quit if appellee was retained and a quitting upon the employer's refusal to discharge.

While it is true that under all civilized forms of government, every man surrenders for the general good a certain amount of that absolute freedom of action which may adhere to the individual in an independent or natural state, yet, under our institutions, it is a cardinal principle that each man retains the greatest freedom of action compatible with the general welfare. The right to control his own labor and to bestow or withhold it where he will, belongs to every man. Even though he be under contract to render services, the

courts will not interfere to compel him to specifically perform them. *Arthur* v. *Oakes*, 63 Fed. Rep. 310 (25 L. R. A. 414).

So far as appears by these instructions none of the appellants were under any continuing contract to labor for their employer. Each one could have quit without incurring any civil liability to him. What each one could rightfully do certainly all could do, if they so desired, especially when their concerted action was taken peaceably without any threats, violence, or attempt at intimidation.

There is no law to compel one man or any body of men to work for or with another who is personally obnoxious to them. If they cannot be by law compelled to work, I am wholly unable to see how they can incur any personal liability by simply ceasing to do that which they have not agreed to do, and for the performance of which they are under no obligation whatever.

Under our law every workman assumes many risks arising from the incompetency or negligence of his fellow-workmen. It would be an anomalous doctrine to hold that after his fellows have concluded that he was not a safe, or even a desirable companion, they must continue to work with him, under the penalty of paying damages if, by their refusal to do so, the works are for a time stopped and he thrown out of employment. We cannot believe it to be in accordance with the spirit of our institutions or the law of the land, to say that a body of workmen must respond in damages because they, without malice or any evil motive, peaceably and quietly quit work, which they are not required to continue, rather than remain at work with one who is for any reason unsatisfactory to them. To so hold would be subversive of their natural and legal rights and tend to place them in a condition of involuntary servitude.

In *Arthur* v. *Oakes, supra,* and in *Longshore Print. and Pub. Co.* v. *Howell* (Or.), 38 Pac. Rep. 547, it was decided that a "strike" was not necessarily illegal or unlawful if conducted in a proper manner, and in the latter case it was further adjudged that it might be rightfully carried on to compel the employer to limit the number of his apprentices.

By a further instruction the court told the jury : "If you find from the evidence that the driver or hauler in the coal mine refused to haul plaintiff's coal, and that the defendants did not induce or persuade or procure him to refuse to haul coal for the plaintiff, then the defendants would not be liable for such refusal to haul said coal. But, if you further find that the driver knew of any agreement among the defendants, or of any two or more of the defendants, to quit work unless the plaintiff was discharged from work at said coal mine, and that said driver believed that he was advancing the interest of the defendants by refusing to haul coal for the plaintiff, and for that reason refused to haul coal for plaintiff, then the driver was a co-conspirator, and the defendants or any two or more of them, if you should find they entered into any such agreement, would be liable for the acts of such driver the same as if they had done it themselves." This instruction ought not to be sustained. The utmost that could rightfully be claimed under it, by facts set forth, would be that the jury might, from the facts set out and the other facts in the case, conclude that the driver was really acting in concert with the appellants. Surely it could not be asserted as a matter of law that one is a conspirator with others in doing an act without their knowledge or consent, inducement, persuasion or procurement, but simply because he thought they wanted it done.

Exceptions were properly taken to these instructions ;

they are properly brought into the record; the giving of each was assigned as cause for new trial, and they are urged as causes for reversal in appellants' brief.

Judgment reversed, with instructions to grant a new trial.

Ross, J., concurs in the result.

Filed December 10, 1895.