SHINE et al. v. FOX BROS. MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. October 19, 1907.)

INJUNCTION—GROUNDS—BOYCOTT BY LABOR UNIONS OF PRODUCT OF NONUNION FACTORY.

Complainant company operated a factory for the manufacture of sash, doors, and other articles of "trim" for buildings in St. Louis, employing from 50 to 75 men. It conducted its factory on the open shop principle, employing union and nonunion men without discrimination; but all of its workmen were in fact nonunion. Defendants were labor unions, and their representatives comprising carpenters and members of the building trades. They appointed a committee for the purpose of unionizing complainant's and other nonunion shops, which committee did not attempt to induce complainant's employés to join the union, but tried to induce complainant to employ only union men and to discharge all employés who did not join the union. When complainant refused, they issued circulars giving a list of all union shops in the city engaged in the same business, and stating that union carpenters would not be permitted to work upon building materials not the product of a union shop, which they sent to building contractors and owners, and by threatening, and in some instances calling, strikes of their union workmen, they compelled a number of contractors who had been customers of complainant to sign agreements not to buy from it in the future, and in other ways undertook to make it impossible for complainant to do business unless it acceded to their demands. *Held*, that their concert of action and their acts constituted an unlawful interference with complainant's business, which entitled it to an injunction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 174.]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

George H. Shields and Shepard Barclay (Thomas T. Fauntleroy and Cornelius H. Fauntleroy, on the brief), for appellants.

Herbert R. Marlatt and F. H. Sullivan, for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. This is an appeal from an order temporarily enjoining certain labor organizations and their officers from boycotting the manufacturing company and the product of its factory. The action of the trial court was in view of the following facts: The complainant, the manufacturing company, is engaged in the manufacture of sash, doors, blinds, and other articles used in the construction of buildings. Its factory is located in St. Louis, Mo., and is what is known as an "open shop"; that is to say, the complainant did not discriminate between union and nonunion labor, but left that matter to the voluntary choice of its employés. So far as complainant was concerned, workmen of both classes could obtain employment there. In fact, however, its employés, numbering from 50 to 75, were nonunion. The rules of the union labor organizations did not permit their members to work in an open shop except in special cases and for specific purposes. There were 23 open shop factories in St. Louis like complainant's, and their product, which was commonly called "trim," was about 80 per cent. of the total amount used annually in the building operations in that city. The employés in these factories, about 1,000

in number, were nonunion, excepting perhaps 3 or 4. By far the greater proportion, probably upward of 90 per cent., of the carpenters engaged in the erection of buildings in St. Louis belonged to union labor organizations. In this state of affairs, a representative of the national organization known as the "United Brotherhood of Carpenters and Joiners of America" came from New York to St. Louis for the purpose of organizing the open shop factories in St. Louis into closed or union shops. He took charge of and directed the course of the defendants to accomplish that end. Although action was taken against some of the other open shop factories, it is quite clear from the evidence that complainant was selected for especial attention. There seemed to be in its case more persistent and concentrated efforts. The defendants did not go about it by approaching complainant's employés and persuading them to join the union labor organizations, but they endeavored to make it impossible for complainant to continue its business unless it would adjust the wages and hours of labor to the union scale and require its employés to join the unions or leave its service. The defendants did not seek the assent or co-operation of the nonunion employés. Their efforts were not solicited by those employés, nor did the complainant invite their intervention. The relations between complainant and its employés were mutually satisfactory. There was no strike, and no controversy about wages, hours, or other conditions of service. The defendants sought to accomplish their purpose in this way: Upon the arrival of the organizer, a committee known as the "trim committee" was appointed by the central governing body of the defendant organizations. The organizer was ex officio a member of this committee. To them was committed the active duty of organizing the open shops. They caused to be printed circulars giving lists of the factories which were run as closed shops, and delivered them to contracting builders and architects of St. Louis, who would have to do with the preparation of plans and specifications and the construction of buildings. They also gave them to owners of property who were about to improve the same. They watched the records of building permits to learn as early as possible of projected building enterprises. The list of closed shops implied that all those not named ·in the list were, to use the expression employed, "unfair." The circulars contained a warning that union carpenters would not be permitted to work upon any building materials not the product of a closed shop. They kept track of the output of complainant's factory and where it was delivered for use in building. Some contractors who had been customers of complainant for many years were required to sign a contract which put an end to this patronage. Building operations in which the product was used were suspended by strikes of union workmen which were ordered by the defendants. In some instances the union carpenters did not desire to cease work, but they were required to do so by threats of discipline at the hands of the organizations, which meant fines and ultimate expulsion. In one instance, union workmen, upon a building in which complainant's product was used, were fined by their organizations for refusing to cease work at the direction of individual defendants, and the contractor who employed them, though not a member of any union, was also fined and required to pay a sum

of money as a condition to his being allowed to continue work with the use of union labor. In most instances where obligations had been incurred by builders requiring them to use the product of complainant's factory, they were allowed to continue with union labor upon the condition that a contract be executed, wherein the builder agreed that in the future he would not use such material. The defendant organizations also had what is known as a "we don't patronize" list. This was applied to a brewing association which had allowed nonunion "trim" to be used in the construction of one of its buildings. When the brewing company learned that its product was being boycotted, it canceled its contract for the use of the nonunion product, and the organizer sent forth a statement that the concern was no longer unfair to union labor. It does not appear, however, that this method was employed against the complainant.

We are of the opinion that the combination and concert of action of the defendants and the character of the active measures taken against the complainant, its product and its customers, including the enforced signing of contracts by such customers putting an end to future business relations with the complainant, and the notices and warnings to those who might become customers in the future, make the case indistinguishable from that of Hopkins v. Oxley Stave Co., 83 Fed. 912, 28 C. C. A. 99.

Much evidence offered by both parties which was germane to the comprehensive charges made in the bill was excluded at the hearing and does not appear in the record. The proper practice, even though the admissibility of the evidence was doubtful, is shown in Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521, and Dowagiac Mfg. Co. v. Lochren, 143 Fed. 211, 74 C. C. A. 341.

The order of the Circuit Court is affirmed.