RHODES BROTHERS CO. *vs.* MUSICIANS PROTECTIVE UNION, LOCAL NO. 198, A. F. OF M., OF PROVIDENCE, R. I., *et al.*

JANUARY 4, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1)  *Labor Unions.*

Complainant entered into a contract with a musician, a member of the respondent union, to furnish certain musicians, members of the union, during the season of an amusement resort. The contract contained the provision that it should not be "so construed as to interfere with any obligation which the musicians owe to the (union) by reason of their prior obligations to the (union) as members thereof."

Complainant claiming that the music was unsatisfactory, cancelled the contract and employed another orchestra also composed of members of the union, whereupon the union passed a vote forbidding its members to enter or to continue in the employment of complainant, and complainant brought its bill seeking an injunction to restrain respondents from interfering with the engagement of members of the union. The new orchestra was not ready to continue in the employment of complainant and complainant did not care for their services unless they were retained as members of the union. The contract was in the form prescribed by the union, and when the difficulty arose between the parties, complainant appealed to the union, and after such hearing, the union found that the contract was binding upon

both parties and forbade its members entering into the employment of complainant without permission of its directors, under the authority of the following by-law of the union· "Members shall not play for—any person—who has broken a contract with a member of the union: In case of doubt as to which party has broken the contract it must be referred to the board of directors."

*Held,* that complainant must have known that it was dealing with the other party to the contract as a member and under the rules of the union.

*Held,* further, that the by-law was not in itself unlawful and its enforcement upon the members of the union who had voluntarily subjected themselves to its provisions did not amount to an intimidation or to a threat justifying the interference of a court of equity, although practically compelling them to choose between the benefits of the engagement and membership in the union, but amounted to notice that complainant had brought itself within the scope of the by-law and members of the union entering into employment of complainant would be dealt with in accordance therewith. In such enforcement of its by-law, the union was acting within its rights.

(2)  *Labor Unions.  Penalties.*

A labor union may make and enforce by penalties, rules for the government of its members where only the rights of the union and its members are involved, and this action should not be restricted, because the employer may suffer incidental damage thereby.

(3)  *Equity.  Preliminary Injunctions.*

To secure a preliminary injunction the complainant should satisfy the court that there is a substantial question to be tried. Whether irreparable injury would result depends largely upon the character of the act alleged to be injurious. Such act must not only be injurious, but also unlawful. If an injury follows from a proper and lawful act it is *damnum absque injuria.*

BILL IN EQUITY, seeking relief by injunction. Heard on appeal from decree of Superior Court granting preliminary injunction. Appeal sustained; decree reversed.

VINCENT, J. This is an appeal by the respondents from a decree of the Superior Court granting to the Rhodes Brothers Company a preliminary injunction restraining the respondents from interfering with the members of said union employed by the complainant company and from imposing any fine or penalty upon such members by reason of their continued employment by the complainant.

It appears that the complainant, the Rhodes Brothers Company, has for a number of years maintained a place of

entertainment in Cranston, in the State of Rhode Island, known as "Rhodes-on-the-Pawtuxet," one of the principal features of such place of entertainment being a dance hall or pavilion where those desiring to dance might indulge in that pastime under agreeable and suitable conditions and surroundings upon the payment of a small entrance or other fee.

To carry on this business successfully, it was necessary for the complainant to furnish music of a suitable character and which should be reasonably satisfactory to the patrons of the place. For several years the complainant has exclusively employed members of the respondent union, which is a voluntary unincorporated association, composed of persons in the musical profession residing or located in the city of Providence and in other towns and cities in the State of Rhode Island. In the spring of 1914, the complainant entered into the following contract with Edward M. Fay, a musician engaged in leading and furnishing orchestras and also a member of the respondent union:

"Musicians' Protective Union,
"Providence, R. I.

"Local No. 198.                                    "A. F. of M.

"Contract Blank, March 5, 1914.

"The undersigned party of the first part and second part, respectively agree as follows:

"The party of the first part hereby agrees to furnish 12 musicians, members of Local No. 198, A. F. of M., AS THEIR AGENT, to party of the second part, for $280.00 to play at Rhodes-on-the-Pawtuxet six evenings per week, from 8 P. M. until 11 P. M., and to play Saturday afternoons from 3 P. M. to 6 P. M. (The party of the first part also hereby agrees to play six afternoons and six evenings, each week, three hours each session for the sum of $329.50 per week.) (This engagement to start on or about April 15th, 1914, and to continue until balance of the season of 1914.)

"It is further agreed that if there are any bands or orchestras employed for this engagement who are unfair to the

American Federation of Musicians, this contract shall be considered null and void, as far as party of the first part is concerned, but does not relieve party of the second part.

"As the musicians engaged under the stipulations of this contract are members of the American Federation of Musicians, nothing in this contract shall ever be so construed as to interfere with any obligation which the musicians owe to the American Federation of Musicians by reason of their prior obligations to the American Federation of Musicians as members thereof.

"The party of the second part agrees to fulfill provisions of above.

"E. M. FAY,
"*Party of the First Part.*
"RHODES BROS. CO.,
A. A. RHODES, Treas.,
"*Party of the Second Part.*"

Under this contract, Mr. Fay selected from the members of the respondent union an orchestra which furnished the music at "Rhodes-on-the-Pawtuxet" from April 11, 1914, to June 6, 1914.

(1) Mr. Fay, with the exception of the opening night, did not lead the orchestra himself, but entrusted the performance of that duty to his brother. The contract does not by its terms secure to the complainant the personal services of Mr. Fay as a leader or otherwise. The complainant claims that the music was so unsatisfactory in character that it provoked frequent complaints from the patrons of the place and fully justified the complainant's action in cancelling the contract. After the cancellation of this contract the complainant employed another orchestra, also composed of members of the respondent union, whereupon the union through its board of directors passed a vote forbidding its members to enter or to continue in the employment of the complainant as musicians.

In this situation of affairs, the complainant filed its bill of complaint against the Musicians' Protective Union, Local No. 198, A. F. of M., Providence, R. I., and certain individuals composing its board of directors.

The complainant sets forth in its bill, as amended, that it had been for years past engaged in carrying on a place of entertainment and amusement in Cranston which had been and was being patronized by a large number of people from Providence, Pawtucket, Cranston and other places for the purpose of dancing and that it was necessary for the complainant to employ an orchestra capable of furnishing music suitable for such purpose; that the complainant is informed and believes that the respondent association comprises in its membership all the available musicians in the State of Rhode Island. That the complainant has never employed at its place of amusement any musicians outside of the membership of the respondent association and that it does not desire so to do; that the quality and character of the music has not been and is not satisfactory to the patrons of the place, but has on the contrary provoked repeated complaints, making it necessary for the complainant to employ other professional musicians; that it has endeavored to employ other musicians also members of the respondent association who could and would furnish music of a quality and character satisfactory to its patrons, but that the respondents have undertaken to prevent other members of the union from furnishing music at the complainant's place of amusement and in pursuance thereof its board of directors on June 4, 1914, passed a vote prohibiting professional musicians, members of the respondent association, from entering into any engagement with the Rhodes Brothers Company to play at "Rhodes-on-the-Pawtuxet" during the season of 1914.

The complainant's bill prays for a temporary and permanent injunction restraining the respondents from interfering with the complainant in the exercise of its right and privilege of engaging members of the respondent association or in any manner preventing anyone now or who may

hereafter be employed by the complainant as a musician or may be desirous of such employment from entering into or continuing in any contract relations with the complainant or from depriving the complainant of the services of any such person through the imposition, enforcement or collection or any threat or attempt to impose, enforce or collect any fine or penalty or expel or attempt or threaten to expel any member of the respondent union on account of his employment or engagement or any contract with the complainant in relation to musical services growing out of the same and from contriving by threats or intimidation or in any way hindering any person from entering into any contract relations as a musician with the complainant and that the notice to members forbidding them to enter into the employ of the complainant may be declared null and void and of no effect.

The case came on for hearing in the Superior Court upon the question of the temporary injunction upon bill, answer, affidavits and oral testimony. The Superior Court rendered a decision, in the first instance, that the complainant while having made out a case in other respects had failed to show that the action of the respondents, if not interfered with, would result in an irreparable injury to the complainant. Later the case was reopened before another justice of the Superior Court for the purpose of permitting the complainant to offer testimony bearing upon the question of irreparable injury. Upon this hearing the court decided in favor of the complainant and the following decree enjoining the respondent association was entered: "That the respondents, The Musicians Protective Union, Local No. 198, A. F. of M., of Providence, R. I., a voluntary unincorporated association, its officers, directors, agents and servants are hereby restrained and enjoined from interfering with the business of the complainant by reason of any matter or thing growing out of a certain contract heretofore entered into between the Rhodes Brothers Company and said association, or any member of said association, offered in evidence at the

hearing and marked 'Respondents' Exhibit A.,' or by reason of any matter or thing growing out of said contract, from imposing, enforcing or collecting or attempting to impose, enforce or collect any fine or penalty by reason of any matter or thing growing out of said contract, upon any member of said Musicians' Protective Union, Local No. 198, A. F. of M., of Providence, R. I., on account of the employ- ment or engagement of any such member as musician by said complainant, until further order of the Court."

From this decree the respondents have taken an appeal alleging (1) that said decree is against the law; (2) that said decree is against the evidence and the weight of the evidence; (3) that the complainant has not shown any probable right to final relief; (4) that the granting of the preliminary injunction is equivalent to final relief; (5) that the complainant has not shown that it would be irreparably injured if the injunction were not granted; and (6) that the finding of fact by Mr. Justice Brown that complainant could engage a competent orchestra outside of the union is conclusive that complainant would not be irreparably injured if the injunction were not granted, and the question of irreparable injury being the only question opened to Judge Brown for rehearing his said finding of fact is con- clusive that the preliminary injunction should not be granted.

The novelty of the question presented resides in the fact that the complainant feeling that its interests would be better served through the employment of union men desires to employ the members of this union, and certain members of the union desire to enter the employment of the complainant provided they can do so without imperiling their membership in the union or subjecting themselves to any fines or disciplinary measures which the by-laws of the union authorize.   The desires of both the complainant and of the men whom it desires to employ are therefore conditional.

The contract between the complainant and Mr. Fay is in the form prescribed by the union and upon one of the blanks provided by the union.   The representatives of the com-

plainant, in executing this contract, must have been aware that they were dealing with Mr. Fay as a member and under the rules and regulations of the union. This is further evidenced by the fact that when the difficulty arose between the complainant and the union, and the contract was rescinded by the former, the complainant appealed to the directors of the union for a settlement of the question and appeared, through its representatives, and presented its side of the controversy. Upon this hearing the directors of the union found that the contract was binding upon both parties and a vote was subsequently passed forbidding members of the union from entering the employment of the complainant without permission of the said directors.

The by-law of the union under which this action was taken is as follows, Sec. 13, Art. VII: "Members shall not play for the proprietor of a hall, concert saloon, theatre, or any person, club, company or organization who has broken a contract with a member or members of this Union. In case of doubt as to which party has broken the contract, it must be referred to the Board of Directors."

The complainant does not claim that the members of the respondent association are deterred from accepting employment at its place of business through any acts of violence or any acts or threats producing a fear of violence, but it does claim that any disciplinary action under this by-law, based upon such employment, would be unlawful and would amount to a combination or conspiracy having for its purpose the exclusion of the complainant from the open labor market and resulting in irreparable injury.

We cannot say that this by-law is in itself unlawful or that its enforcement upon the members of the union who have voluntarily subjected themselves to its provisions amounts to an intimidation or to a threat which would justify the interference of a court of equity. It left the members of the union free, in one sense, to enter the employment of the complainant, although it practically compelled them to choose between the benefits of such an engagement and membership in the union.

As the court said in *Jetton-Dekle Lumber Co.* v. *Mather*, 53 Fla. 969, "the risk of fines and expulsion is one voluntarily assumed by the members entering the union, and if no longer willing to pay the price, if the advantages to be derived are not equal to the burdens assumed, each member has a perfect right to withdraw from the union."

The law as to the duties of members to obey the rules and regulations of the association to which they belong is well set forth in the opinion of SHELDON, J., in *Willcutt & Sons Co.* v. *Driscoll*, 200 Mass. 110 *et seq.* as follows: "When one chooses voluntarily to unite with others of the same craft in forming an organization for the purpose of bringing about by the united action of all its members more favorable conditions of employment, he is bound, so long as he desires to remain a member of that organization, to submit within certain limits his own freedom alike of judgment and of action to judgment of his associates, and to conform his conduct to that standard which they shall have agreed to be for the best interests of all and of each. Unity of action would be impossible upon any other terms."

(2)    Martin in his work on The Modern Law of Labor Unions says in this connection, Sec. 150, p. 207: "This general right of a union to make and enforce by penalties, rules and by-laws for the government of its members, has never been denied, where the rights of the union and its members only are involved. Can it be held unlawful, then, as between a union and its members, for the union to impose penalties, in accordance with its rules and by-laws . . . ? The lawfulness of such action by the union, as between itself and its members, is amply sustained by many well-considered decisions, and denied by none, nor could any valid reason be assigned for such denial . . . Nor can any sound reason be advanced why this right should be restricted or denied, merely because the employer may suffer incidental damage thereby."

The complainant urges that the vote of the directors of the union forbidding its members to enter the employment of

the complainant was in the nature of a threat and operated to intimidate them, and brings the respondents within the rule laid down in the adjudicated cases that all acts of violence, threats of violence, or acts calculated to intimidate, may be restrained by injunction.  It seems to us, however, that this vote amounts to nothing more than a notice to the members of the union that the complainant has brought itself within the scope of the by-law and that if they should enter the employment of the complainant they would be dealt with in accordance therewith.  We do not think that such vote amounts to intimidation as defined by the adjudicated cases, bearing in mind that such vote was passed after a hearing in which the complainant had participated and after the board of directors had found the contract binding upon both parties thereto.

The complainant states that the case presents three questions for the determination of the court upon the motion for a preliminary injunction: (1) Has the complainant shown probable cause for relief? (2) Has the complainant shown that it would suffer irreparable injury unless a preliminary injunction was granted? and (3) Has the complainant a constitutional right to a free market and to employ any person willing to enter its employment?

The complainant has also presented in its brief some argument and cites some authority as to the general scope and purpose of a preliminary injunction.  As to this there seems to be no contention between the parties and we see no reason for doubting the general rule laid down in Kerr on Injunction, 3rd Ed. pp. 61 and 62, cited by complainant in its brief.  Under the rule, the complainant, in order to get a preliminary injunction, must sustain the burden of satisfying the court that there is a substantial question to be tried.

(3) The question whether or not the complainant would suffer an irreparable injury largely depends for its solution upon the character of the act or acts alleged to be injurious.  It is not every injurious act which renders the party committing it subject to injunction.  The act must not only be injurious,

but it must also be unlawful.   If an injury follows from a proper and lawful act it is *damnum absque injuria*.   We therefore come back to the act of. the respondent in passing a vote, by its board of directors, forbidding its members to enter or continue in the employment of the complainant. That the respondent union might lawfully do so we have already concluded.

This is not simply a case where the complainant desires to employ certain musicians who are desirous of entering its employment.   The attitude of both the complainant and the musicians is, as we have already seen, conditioned upon the continued membership of the musicians in the union.   To say that the musicians after subjecting themselves to the laws and regulations of the union, which provide for a finding as to the validity of a contract between its members and outside parties, and that in case of a broken contract members shall not enter the employment of the party breaking it, were willing to enter such employment, is not correctly expressive of the situation in the present case.   While they may signify their desire to enter the employment of the complainant, they only desire to do so upon the condition that they can at the same time retain their membership in the union. It is quite apparent that the interest of these musicians in the union is paramount to that of their employment by the complainant, and that on the other hand the desirability of these particular musicians and their value to the complainant over other musicians resides in the fact that they are members of the union.   These men are not ready to enter, or continue in, the employment of the complainant, nor does the complainant care for their services except they be retained as members of the union.   This being the situation it seems to follow that the further dealings between the complainant and these musicians must depend on the willingness of the union to waive .its by-law before mentioned and to consent that its members may continue in the employ of the complainant without penalty, discipline or expulsion or that the musicians accept such employment in disregard of

the union and its regulations, assuming the responsibility of its discipline. The case of *Shine* v. *Fox Bros. Mfg. Co.*, 156 Fed. Rep. 357, upon which the complainant seems to place reliance, would, from the quotation therefrom in its brief, seem to have some important bearing upon the case at bar, but from a closer and more extended examination that case does not appear at all decisive of the question which is controlling here. In that case the judgment of the court was based upon the fact that the defendants in combination and by concert of action were undertaking to compel independent shops to unionize and to enforce their demands in that particular by forbidding union men to work upon building materials which were not the product of a union shop and by threatening to and calling strikes of union workmen when their requests were not complied with.

If we eliminate from the consideration of this case the authorities based upon violence, threats of violence, conspiracies and unlawful combinations, little remains in the way of authority which could be usefully applied to the determination of the particular question before us. All that the respondent union is attempting to do or contemplates doing, so far as appears, is to enforce against its own members the provisions of a by-law under the terms of which they have voluntarily brought themselves and promised to abide. The union is not acting with others either by way of conspiracy or combination. It is, at most, only claiming the right to act for itself in the enforcement of its by-laws governing the conduct of its own members, and this we think it has a right to do. *Bohn Manufacturing Co.* v. *Hollis et al.*, 54 Minn. 223; *Thomas* v. *Cincinnati, &c. Ry. Co.*, 62 Fed. 803.

In *Bohn Manufacturing Co.* v. *Hollis et al.*, it was held that an agreement between the members of a retail lumber dealers' association not to deal with any wholesale dealer who sells directly to customers not dealers, at a point where a member of the association is doing business, and containing provision for notification to all members when the

wholesale dealer makes such a sale and for the expulsion of members who dealt with him is not unlawful and such wholesale dealers cannot enjoin the sending out of such notices; that the infliction of the penalty of expulsion was not coercion and that it was wholly a matter of their own free choice whether they preferred to trade with plaintiff or the association.

In the case of *Vegelahn* v. *Guntner*, 167 Mass. 92, at p. 99 it is held, in the majority opinion that "a combination among persons merely to regulate their own conduct is within allowable competition, and is lawful, although others may be indirectly affected thereby."

In *Wabash R. Co.* v. *Hannahan et al.*, 121 Fed. Rep. 563, the court said, "an employee has an unquestionable right to place a price and impose conditions upon his labor at the outset of his employment, or, unless restrained by contract obligations, upon the continuance of his labor at any time thereafter; and, if the terms and conditions are not complied with by the employer, he has a clear right either not to engage or having engaged in his service to cease from work. What one may do all may do  .  .  .  and persons interested in their welfare may advise, aid, and assist them in securing such terms and conditions of service as will best subserve their interests, and what they may lawfully do singly or together they may organize and combine to accomplish."

We do not think that the case which the complainant presents is one for the exercise of the authority of a court of equity by way of injunction.

The decree of the Superior Court granting to the complainant a preliminary injunction is reversed and the case is remanded to that court for further proceedings.

*Henry Marsh, Jr., John S. Murdock,* for complainant.

*Fitzgerald & Higgins, Thomas A. Carroll, James C. Collins,* for respondents.