# GEORGE J. GRANT CONSTRUCTION COMPANY v. ST. PAUL BUILDING TRADES COUNCIL AND OTHERS.[1]

February 23, 1917.

Nos. 20,058—(176).

**Appeal and error — review — denial of restraining order.**

1. The refusal of a temporary injunction to plaintiff upon pleadings and affidavits is, for purposes of review, deemed a finding that the allegations of the complaint are not true insofar as they are denied.

**Injunction — restraining combination of lawful acts as illegal.**

2. The restraing power of a court of equity will not often be exercised to restrain a number of lawful acts on the theory that they constitute an unlawful whole.

**Trade union — refusal to work for certain persons.**

3. It is not unlawful for the members of labor unions to agree among

[1]Reported in 161 N. W. 520, 1055.

themselves that they will not work for a building contractor with whom they have a controversy, nor for any subcontractor on any contract he may have on hand.

May 4, 1917.

**Trade dispute — services withheld by agreement.**

An agreement among union employees in the building trades, who have a *bona fide* dispute with a contractor, to withhold their services from such contractor or his subcontractors until the dispute is settled, is not a violation of the statute which makes unlawful any conspiracy to do an act injurious to trade and commerce, nor of the statute which forbids combinations in restraint of trade.

Action in the district court for Ramsey county against defendant, an unincorporated association composed of delegates from the various unions of the building trades, and its officers, and members of its executive board, and others, to recover $25,000 and to restrain defendant council, its officers and members and all other persons acting in conjunction with them, from conspiring together to restrain trade in the building business in such manner as to injure plaintiff, and to injure or interfere with plaintiff's business in various specified ways. Plaintiff obtained an order, requiring defendants to show cause why the acts mentioned in the complaint should not be restrained pending the hearing. After hearing, plaintiff's motion for a temporary injunction *pendente lite* was denied, Dickson, J. From the order denying the application for a temporary injunction, plaintiff appealed. Affirmed.

*James D. Shearer, L. B. Byard* and *Walter Gordon Merritt,* for appellant.

*Lawler & Mullaly,* for respondents.

On February 23, 1917, the following opinion was filed:

HALLAM, J.

Plaintiff is engaged in business as builder and contractor in St. Paul. Defendant council is an unincorporated association composed of delegates from local unions in the different branches of the building business in St. Paul, and the individual defendants are officers or representatives of said organizations. The complaint covers over 20 printed pages. In brief it alleges that defendants have entered into a conspiracy to injure

plaintiff and destroy its business; that defendants have posted plaintiff in public places as unfair to union labor, and have placed or threatened to place on the unfair list persons who deal with plaintiff, that defendants have threatened customers and prospective customers of plaintiff with labor disturbances if they enter into business relations with plaintiff, have induced others to violate their contracts with plaintiff, have forbidden union men doing work for subcontractors in the employ of plaintiff; have induced workmen not to handle or work upon any of plaintiff's materials; have induced men to refuse to haul material to or from buildings where plaintiff was doing work, and have prevented plaintiff from securing necessary material to carry on its business. The complaint then alleges that the conspiracy has never been limited as to time, place or the means or devices employed to carry it out, and that the general scheme is to employ any and all means which may suggest themselves from time to time to destroy and crush the plaintiff and its business. Upon this complaint and upon affidavits submitted, plaintiff asked for a temporary injunction restraining the acts above complained of, and others as well, during the pendency of this action. An answer was interposed and answering affidavits were submitted by defendants. After a hearing, the trial court denied the injunction. Plaintiff appeals.

1. The affidavits are conflicting. The refusal of a temporary injunction to plaintiff by the trial court, upon the pleadings and affidavits of both parties, is, for the purpose of review in this court, deemed to be in effect a finding that the allegations of the complaint and supporting affidavits are not true insofar as they are denied and that the allegations of the answer and rebutting affidavits are true. Taking this view of the case we are obliged to reject as not proven many of the charges made by plaintiff.

2. On the argument in this court, counsel for the plaintiff admitted that no single act done was claimed to be unlawful, his claim was that the entire set of acts taken together and in connection with the purpose with which they were done, were unlawful on the theory that they constituted what he termed "organized economic oppression." The restraining power of courts of equity has usually been invoked to enjoin some tangible or specific acts. Badger Brass Mnfg. Co. v. Daly, 137 Wis. 601, 119 N. W. 328. It is not easy to frame an injunction to restrain

"organized economic oppression." It is not easy to forbid a course of conduct based upon acts, lawful when taken alone, on the theory that they are unlawful when taken as a whole. Some courts have held that an act, lawful if done by one person, may be unlawful if co-operated in by many, but we are not aware that it has ever been held that many lawful acts done by the same person or body of persons can constitute an unlawful whole.

3. Coming to the established facts we find the situation little more or less than this: A labor dispute exists between plaintiff and the defendant unions and their members. Defendants are not employees of plaintiff. The dispute has arisen mainly from the fact that plaintiff runs what is termed an "open shop," that is, it employs nonunion men, and it is claimed plaintiff has at some times dealt unfairly with union men and has in some cases refused them employment. It would seem to be a *bona fide* dispute on both sides. With the merits of it we are not further concerned.

The unions of building trades and their members have agreed among themselves that, until these controversies are adjusted, they will not work for plaintiff or for any subcontractor on any contract plaintiff may have on hand. We think the lawfulness of this conduct is the one question before the court.

Some acts especially complained of are in reality within this class. For example: In one case union teamsters refused to haul sand excavated by plaintiff for a building it had under construction. The excavation was part of the construction and did not differ in principle from other work in connection with the building.

In another case union carpenters refused to work for another contractor, Mr. Norlander, with a scaffold belonging to plaintiff and hauled to the building where it was to be used by plaintiff's nonunion teamsters. The difficulty was settled by Norlander agreeing that the scaffolding should be hauled away by union teamsters. This incident signified no more than a refusal to work on a building if nonunion men were employed on work incident to the construction.

In a few isolated cases defendants have gone farther:

In one case union men refused to work with a steam shovel hired from plaintiff by another contractor. The incident was a casual one. There

is no threatened injury to be enjoined. There is no showing that plaintiff manufactures or sells or habitually hires out steam shovels.

In one case the carpenter union placed the John Martin Lumber Company on the unfair list, because that company refused to specify union labor on a building it was constructing and had the building erected by plaintiff's nonunion carpenters. No damage is shown to have been done or threatened to plaintiff or to anyone else.

In one case some of defendants refused to participate in an outdoor sports carnival, unless assured that plaintiff would be given no more work in building therefor. Plaintiff had already done a substantial part of the work and little remained to be done.

These few and isolated transactions, whether taken alone or collectively, do not seem to us important enough to warrant injunctive relief, nor do we consider their bearing on this case such that it is necessary to examine each one and determine whether the persons committing them were within their legal rights.

Some conflict is found in decisions which undertake to define the right to injunction against the acts of organized labor, but not so much as may at first appear. The facts in no two cases are the same. Some involved real or threatened violence, as in Wyeman v. Deady, 79 Conn. 414, 65 Atl. 129, 118 Am. St. 152, 8 Ann. Cas. 375; some involved interference with contract relations, as in Shine v. Fox Bros. Mnfg. Co. 156 Fed. 357, 86 C. C. A. 311; Bitterman v. Louisville & N. R. Co. 207 U. S. 206, 28 Sup. Ct. 91, 52 L. ed. 171, 12 Ann. Cas. 693; New England Cement Gun Co. v. McGivern, 218 Mass. 198, 105 N. E. 885, L.R.A. 1916C, 986; some a boycott or refusal to work upon material manufactured by those whose business is such manufacture, as in Irving v. Joint Dist. Council, U. B. of Carpenters (C. C.) 180 Fed. 896; Burnham v. Dowd, 217 Mass. 351, 104 N. E. 841, 51 L.R.A. (N.S.) 778; some a general boycott of all products of a manufacturer as in Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. ed. 488, 13 Ann. Cas. 815; Lawlor v. Loewe, 235 U. S. 522, 35 Sup. Ct. 170, 59 L. ed. 341; Iron Molders' Union v. Allis-Chalmers Co. 166 Fed. 45, 91 C. C. A. 631, 20 L.R.A. (N. S.) 315; some a general boycott of those who deal with the offending employer as in Barr v. Essex Trades Council, 53 N. J. Eq. 101, 30 Atl. 881; State v. Glidden, 55 Conn. 46, 8 Atl. 890, 3 Am.

St. 23; Seattle Brewing & Malting Co. v. Hansen (C. C.) 144 Fed. 1011; Quinn v. Leathem, L. R. App. Cas. (1901) 495. None of these conditions are found in this case.

It is not easy to define the point beyond which labor in combination cannot go. It is perhaps not best that we try to do so. We will do well to confine ourselves to the facts of this case, and determine only the rights of the parties arising from those facts. The determination of the questions here involved is not difficult. Plaintiff may employ whom it pleases. It may maintain an open shop if it pleases. It should not be coerced into doing otherwise. Defendants have the right to work for whom they please. It is best that we give to both employer and employee a broad field of action. As said by Judge Cooley: "It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice, or malice. With his reasons neither the public nor third persons have any legal concern." 2 Cooley, Torts (2d ed.) p. 328. Defendants may, if no contract is involved, refuse to work in an "open shop." They may agree among themselves not to do so. Mayer v. Journeymen Stonecutters Assn. 47 N. J. Eq. 519, 20 Atl. 492; Purvis v. Local No. 500, United Brotherhood, 214 Pa. St. 348, 63 Atl. 585, 12 L.R.A. (N. S.) 642, 112 Am. St. 757, 6 Ann. Cas. 275; Rhodes Bros. Co. v. Musicians' Protective Union, 37 R. I. 281, 92 Atl. 641, L.R.A. 1915E, 1037; Gibson v. Lawson (1891) 2 Q. B. 560; Commonwealth v. Hunt, 4 Metc. (45 Mass.) 111, 38 Am. Dec. 346, Bowen v. Murdock Matheson, 14 Allen (Mass.) 499; Kemp v. Division No. 241, 255 Ill. 213, 99 N. E. 389, Ann. Cas. 1913D, 347; Pickett v. Walsh, 192 Mass. 572, 78 N. E. 741; Karges Furniture Co. v. Amalgamated Local Union, 165 Ind. 421, 75 N. E. 877, 2 L.R.A. (N. S.) 788, 6 Ann. Cas. 829; Clemmitt v. Watson, 14 Ind. App. 38, 42 N. E. 367.

May they, because plaintiff employs nonunion labor in construction of a building, agree not to work for a subcontractor of part of the work who does employ only union men? It seems to us this question was answered yes by this court in Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663, 1118, 63 L.R.A. 753, 103 Am. St. 477, 1 Ann. Cas. 172. There, as here, the controversy arose out of the effort of the

defendant unions to compel the plaintiffs to employ only union labor. Defendant unions notified owners of buildings under construction that if plaintiffs were awarded certain subcontracts for work on the buildings, all union men employed on the buildings would be called out. The trial court enjoined the defendants from ordering and notifying members of the union to desist from work on the building because of the fact that plaintiffs were employed thereon. This was held erroneous. It was held that the defendants had acted within their rights, and that they might, for the purpose of strengthening their unions, either singly or collectively refuse to work in places or on buildings on which nonunion labor was employed. We adhere to this decision.

Other authorities sustain this same position. Some go farther.

In Meier v. Speer, 96 Ark. 618, 132 S. W. 988, 32 L.R.A. (N. S.) 792, it was held that the refusal by members of a labor union to lay stone for the foundation of a building, in case an employer of nonunion labor secures the contract for the superstructure, gave no right of action. The court said (p. 625): "In the absence of a contract, appellants had the absolute right, no public duty forbidding, to prescribe the terms upon which they would work for Carbaugh, O'Neal or anyone else. They had the right to refuse to work unless these terms were accepted and contractual relations were thereby created. This appellants had the right to do, severally or in combination, in the union or out of it."

In National Protective Assn. v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L.R.A. 135, 88 Am. St. 648, members of a union notified certain contractors that, if they did not discharge members of plaintiff association and employ members of defendant union, they would cause a general strike of all men of other trades employed on their building. It was held that if the primary purpose was to help members of defendant union the conduct was lawful.

In National Fireproofing Co. v. Mason Builders' Assn. 169 Fed. 259, 94 C. C. A. 535, 26 L.R.A. (N. S.) 148, it was held that the enforcement of a provision in a contract between mason contractors and bricklayers that items in building contracts for fireproofing shall not be sublet, by a clause forbidding bricklayers to work for those who do not comply with it, and by strikes, and notification to contractors that

they cannot take contracts contrary to the terms of the agreement, without incurring the penalty, not unlawful.

In Gill Engraving Co. v. Doerr (D. C.) 214 Fed. 112, it was held, that where the object of a photo engravers' union and its officers and members, in warning employers that the members would handle the work of only such customers as had all their work done in union shops and in threatening to strike, was to increase the power of the union and get more, easier and better paid work for the members, and not to injure the proprietor of a nonunion shop, though such injury had occurred and was foreseen, that the object of the combination and the means employed were legal, and hence gave such proprietor no right to injunctive relief.

In Booth & Brother v. Burgess, 72 N. J. Eq. 181, 65 Atl. 226, labor organization notified boss carpenters that plaintiff manufacturers' goods were unfair and that members of union would not handle them, the scheme of officers of union was to compel the employees against their will to quit work if such material was used. It was said the employees might have combined to so refuse, though they were enjoined because of other acts.

In Macauley Brothers v. Tierney, 19 R. I. 255, 33 Atl. 1, 37 L.R.A. 455, 61 Am. St. 770, a plumbers' association, styling itself "master plumbers," was held to be lawfully entitled to notify wholesalers of plumbers' goods that it would not handle their goods if they sold to plumbers not members of the association.

In Cote v. Murphy, 159 Pa. St. 420, 28 Atl. 190, 23 L.R.A. 135, 39 Am. St. 686, it was held, in a contest between employers and employees, the employers could lawfully attempt to induce other employers to refuse to employ any union labor by inducing wholesalers to refuse to sell their goods to any employer of union labor.

In one case it was held that in case of a strike, striking employees cannot be enjoined from inducing employees, in factories by which their former employer is attempting to get the work done to fill his contract, to refuse to work on it, although it results in the owners of such factories breaking their contracts. Iron Molders' Union v. Allis-Chalmers Co. 166 Fed. 45, 91 C. C. A. 631, 20 L.R.A.(N.S.) 315; Iron Molders' Union No. 125 v. Allis-Chalmers Co. 91 C. C. A. 631,

20 L.R.A. (N. S.) 315. See also Lindsay & Co. v. Montana Federation of Labor, 37 Mont. 264, 96 Pac. 127, 18 L.R.A. (N. S.) 707, 127 Am. St. 722; and Parkinson Co. v. Building Trades Council, 154 Cal. 581, 98 Pac. 1027, 21 L.R.A.(N.S.) 550, 15 Ann. Cas. 1165, which go farther than most courts are willing to go in legalizing boycotts.

Some courts hold against the legality of organized action against an employer other than the one by whom complaining workmen are employed. Burnham v. Dowd, 217 Mass. 351, 104 N. E. 841, 51 L.R.A. (N. S.) 778; Newton Co. v. Erickson, 70 Misc. 291, 26 N. Y. Supp. 949; Irving v. Joint Dist. Council U, B. of Carpenters (C. C.) 180 Fed. 896; S. C., Irving v. Neal (D. C.) 209 Fed. 471, but as above noticed this distinction was repudiated in the Gray case.

The interference with the trade relations of one with whom you have no trade relations yourself is presumptively unlawful, but conditions may be such as to furnish justification for such conduct. Plant v. Woods, 176 Mass. 492, 57 N. E. 1011, 51 L.R.A. 339, 79 Am. St. 30. A person may justify such interference if he is in pursuit of some lawful object. Intent is not the test. The test is broader. A person in furtherance of his own interests may take such action as circumstances may require, and so long as he does not act maliciously toward or unreasonably or unnecessarily interfere with the rights of his neighbor, he cannot be charged with actionable wrong, whatever may be the result of his conduct in pursuing his own welfare. Joyce v. Great Northern Ry. Co. 100 Minn. 225, 233, 110 N. W. 975, 8 L.R.A.(N.S.) 756; Bohn Mnfg. Co. v. Hallis, 54 Minn. 223, 55 N. W. 1119, 21 L.R.A. 337, 40 Am. St. 319. To similar effect, see National Fireproofing Co. v. Mason Builders' Assn. 169 Fed. 259, 94 C. C. A. 535, 26 L.R.A. (N. S.) 148; Meier v. Speer, 96 Ark. 618, 132 S. W. 988, 32 L.R.A. (N. S.) 792; Hopkins v. Oxley Stave Co. 83 Fed. 912, 28 C. C. A. 99; Lohse P. D. Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997, 22 L.R.A. (N. S.) 607, 128 Am. St. 492.

A certain measure of discretion is vested in the trial court in the matter of determining facts and in granting or refusing an injunction *pendente lite*. On the facts which we deem established in this case, we are of the opinion that the discretion of the court was not in this case abused. Order affirmed.

Quinn, J., having taken his seat after the case was submitted, took no part.

On May 4, 1917, the following opinion was filed:

HALLAM, J.

In disposing of this appeal the court did not mention the contention that the acts of defendants were contrary to sections 8595 and 8973 of the General Statutes of 1913. Section 8595 makes unlawful any conspiracy to commit an act injurious to trade or commerce, and section 8973 forbids any combination in restraint of trade.

We do not say that the acts of members of labor unions may not be such as to violate either or both of these statutes, but we are of the opinion that the acts which the original opinion considers as established do not violate either. See State v. Duluth Board of Trade, 107 Minn. 506, 546, 121 N. W. 395; Allis-Chalmers Co. v. Iron Molders' Union, 150 Fed. 155, 179.

It seems clear that neither of these statutes was intended to prohibit combinations to strike for the purpose of increasing or maintaining wages. It is expressly provided that the conspiracy statute does not. Section 8596. No decision has ever construed a statute like our antitrust statute as containing any such inhibition.

We are of the further opinion that it was not the intent of either of the statutes mentioned to prohibit members of labor unions who have a *bona fide* dispute with a building contractor from co-operating to withhold their services from such contractor or his subcontractors until the dispute is settled. Cases cited, United States v. Workingmen's Amalgamated Council, 54 Fed. 994, and Loewe v. Lawlor, 208 U. S. 274, were very different cases.

We may further add that in the original decision we had no intention of holding that the legislature may not prohibit one or many acts which, in the absence of statute, would be lawful, as held in Aikens v. Wisconsin, 195 U. S. 194, and Swift & Co. v. United States, 196 U. S. 375, nor even that an act, ordinarily lawful if taken alone, may not become unlawful when it is part and parcel of an unlawful plot which is "an act in

itself," the usually lawful act in such case being likened by Justice Holmes to "voluntary muscular contraction" which "derives all its character from the consequences which will follow it under the circumstances in which it was done." Aikens v. Wisconsin, 195 U. S. 205.

Petition for reargument denied.