# RODDY v. UNITED MINE WORKERS OF AMERICA et al.

No. 3221. Opinion Filed January 19, 1914.

Rehearing Denied March 10, 1914.

(139 Pac. 126.)

1.     **MASTER AND SERVANT—Trade Unions—Right of Employee to Strike—Liability to Third Persons—Discharge of Non-Union Employee.** Employees of a coal company, who are members of a labor union, have the right, when involved in a trade dispute between themselves and their employer, and growing out of this relation, to protest to their employer against the employment, or retention in his employment, of a non-union employee, and to

accompany such protest with the statement that if such non-union man is employed, or retained, the union employees will strike—that is, that such employees will simultaneously cease to work for such employer—and if such protest is not heeded, the union men have the lawful right to strike; and if it is heeded, the non-union man who is discharged has no cause of action against either the union as an organization, or the members thereof as individuals.

2.    SAME. A petition, based on the charge that the plaintiff, a non-member of a labor union, was discharged from his employment because of the demands therefor made by the authorized agents and committees of a labor organization, who informed the common employer that if such non-union man was not discharged the union men would strike, does not state a cause of action for damages against either the labor organization or the individual members thereof; and a demurrer to such petition was properly sustained.

3.    SAME—Right to Quit Employment—Strikes. Any man, in the absence of a contract to work a definite time, has a right to quit whenever he chooses, for any reason satisfactory to him, or without any reason. If his wages are not satisfactory, his hours too long, his work too hard, his employer or his employment uncongenial, or his colaborers objectionable, his right to quit is absolute. What an individual may do, a number of his co-laborers may join him in doing, provided the thing to be done is lawful.

(Syllabus by Brewer, C.)

Error from District Court, Coal County; Robt. M. Rainey, Judge.

Action by J. H. Roddy against the United Mine Workers of America and others. Judgment for defendants and plaintiff brings error. Affirmed.

C. T. Gibson, for plaintiff in error.

W. N. Redwine and C. M. Threadgill, for defendants in error.

Opinion by BREWER, C. The court sustained a demurrer to the petition, which is lengthy, but which we think is fairly summarized as follows:

The plaintiff alleges:

That the defendant United Mine Workers of America is a voluntary association composed of men engaged in coal mining, in the United States, Mexico, and Canada. That defendant United Mine Workers of America, District No. 21, is a part and

subdivision of the United Mine Workers of America. That defendant Local Union No. 1811 is also a local subdivision of the association. That the 500 or 600 individuals sued are members of the general and district organizations, through their membership in the said local union. That all of the defendants are bound together in one organized body "for the purpose and with the object of uniting all employees who produce or handle coal or coke in or around mines, into one body, and to ameliorate their conditions by conciliation, arbitration or strike."

That the local union secures members for the organization; transacts business of a local nature relating to the organization and its departments; elects local officers and representatives to the national organization; elects or appoints agents, representatives, and committees; and vests them with power and authority to represent the local union in its dealings with the mine operators, etc.

That all the individual defendants were members of the union and were in the employ of the Western Coal & Mining Company, and that as such members of such organization defendants declared who should be employed by such coal company. That there was a parol agreement between the coal company and the defendants in their organized capacity that no one objectionable to organized labor would be employed in its coal mines.

That on the 1st of May, 1909, and for a long time prior thereto, plaintiff had been in the employ of the coal company as an entryman, and was receiving $125 per month for his work. That his relations with the coal company were amicable, and its agents had informed him that he would be retained in its employment so long as his work was satisfactory.

(3) That the defendants conspired "willfully, knowingly, maliciously, and unlawfully" to procure plaintiff's discharge, to destroy his reputation and credit, and to harass and annoy him, to prevent his securing employment, and to publish him as a non-union man, etc.

(4) The fourth paragraph is lengthy, and complains of the union "blacklisting the defendant on the books of the union"

as a nonunion man, etc. (It is not clear what this paragraph intends to charge, unless it be relative to some trial or expulsion of plaintiff from the union; at any rate the language is so indefinite that it is unimportant in this summary.)

The petition then sets out the specific things the defendants are charged with doing at great length, and we think with much superfluity of words, and which, summarized, alleges:

That about May 1, 1909, a committee of the local union (naming the individuals) called on the mine foreman, William Veatch, and informed him "that the plaintiff, J. H. Roddy, was a nonunion man and a man objectionable to the United Mine Workers of America and the membership thereof, defendants herein, had been so recorded on. the books of the defendants herein; that he, the said J. H. Roddy, plaintiff, was a man unfit to work with union men, and that they, etc., demanded * * * that said William Veatch * * * discharge the plaintiff," etc.

It is then charged that this committee made the same statements and demands of John S. Cameron, the mine superintendent. It is then charged that James Mullen, a representative of the United Mine Workers of America, and Mose Clevenger, a representative of district No. 21, of the organization, appeared before John S. Cameron, superintendent, and made the same statements and demands made by the local committee as above stated, with the additional statement that if plaintiff was retained in the employ of the company the defendants would strike and quit their employment with it.

The petition then charges that plaintiff was discharged by the coal company on account of the actions of the defendants, saying that they would strike, and because of the agreement between the company and the union that no nonunion man would be retained in its employment, and that he would not have been discharged but for the actions of the defendants as alleged.

The petition then proceeds with several pages of matter dealing with the results to him of his discharge from his employment, and the recordation of the fact that he was a nonunion man, and the various ways in which he has suffered and been injured thereby, and of the various elements entering into his

claim of an aggregate of $100,000 damages from the defendants, but we think the gravamen of the charge claimed to be actionable has been made to fully appear in the above synopsis of the petition.

When the petition in this case is studied and analyzed, it clearly appears that the thing complained of—the acts forming the sole basis upon which the suit is founded, and for which relief in the way of damages is sought—is that these union men protested to their employer, the coal company, against plaintiff's retention as a workman at the mine, and followed this with the statement that if he was so retained the union men would quit work; the reason given being that plaintiff was a nonunion man. If this action was lawful, it follows that damages cannot be predicated upon it. So our inquiry is ended when we determine whether the defendants, in what they did, were within their legal rights.

Since many individual laborers, in the various trades, have brought themselves together into large and well-organized bodies, with the power, necessarily, and we think rightly, of affecting wages, hours of employment, and other physical as well as moral conditions in all the wide fields of industry, the rights and duties of such organizations and the members thereof, with regard to their employers, as well as to society as a whole, has been a fruitful field of litigation, and practically every court in this country has had occasion to consider some of the many phases of the question. This has brought about much conflict of opinion, but, as we view it, our duty is best performed by confining our remarks here closely to the sole question involved; for, as we perceive it, while the tangled web of judicial opinion affords opportunity for a delightful excursion far afield, yet, one who essays to ramble there must be a very wise man if he does not say concerning it either too much or too little.

We take it as fundamental that any man, in the absence of a contract to work a definite time, has a right to quit whenever he chooses, for any reason satisfactory to him, or without any reason. If his wages are not satisfactory, his hours too long, his work too hard, his employer or employment uncongenial, or

his colaborers objectionable, his right to quit is absolute. We think, under the better authority, that what an individual may do, a number of his colaborers may join him in doing, provided the thing to be done is lawful. We quote the words of Chief Justice Alton B. Parker, in *Nat'l Protective Ass'n v. Cumming,* 170 N. Y. 320, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648:

"It is not the duty of one man to work for another unless he has agreed to, and if he has so agreed but for no fixed period, either may end the contract whenever he chooses. The one may work, or refuse to work, at will, and the other may hire or discharge at will. The terms of employment are subject to mutual agreement, without let or hindrance from any one. If the terms do not suit, or the employer does not please, the right to quit is absolute, and no one may demand a reason therefor. Whatever one man may do alone, he may do in combination with others, provided they have no unlawful object in view. Mere numbers do not ordinarily affect the quality of the act. Workingmen have the right to organize for the purpose of securing higher wages, shorter hours of labor, or improving their relations with their employers. They have the right to strike, that is, to cease working in a body by prearrangement until a grievance is redressed, provided the object is not to gratify malice or inflict injury upon others, but to secure better terms of employment for themselves. A peaceable and orderly strike, not to harm others, but to improve their own condition, is not in violation of law."

The opinion proceeds with a lengthy and interesting discussion of the law, from which the court deduces the following syllabus:

"A labor union may refuse to permit its members to work with fellow servants who are members of a rival organization, may notify the employer to that effect, and that a strike will be ordered unless such servants are discharged, where its action is based upon a proper motive, such as a purpose to secure only the employment of efficient and approved workmen, or to secure an exclusive preference of employment to its members on their own terms and conditions, provided that no force is employed and no unlawful act is committed. If, under such circumstances, the employees objected to are discharged neither they nor the organization of which they are members have a right of action against the union or its members."

In *Clemmitt v. Watson,* 14 Ind. App. 38, 42 N. E. 367, it is said:

"So far as appears by these instructions none of the appellants were under any continuing contract to labor for their employer. Each one could have quit without incurring any civil liability to him. What each one could rightfully do, certainly all could do if they so desired, especially when their concerted action was taken peaceably, without any threats, violence, or attempt at intimidation."

And in *Raycroft v. Tayntor*, 68 Vt. 219, 35 Atl. 53, 33 L. R. A. 225, 54 Am. St. Rep. 882, it is said:

"One who procures the discharge of an employee not engaged for any definite time, by threatening to terminate a contract between himself and the employer, which he had a right to terminate at any time, is not subject to an action by the employee for damages, whatever may have been his motive in procuring the discharge."

In Cook's Trade & Labor Combinations the question of the right to strike is discussed by the author at page 31, section 8, as follows:

"The right of a single individual, apart from contractual relations, to quit his employment, that is to discontinue working for a particular employer, seems never to have been seriously questioned. The idea has been advanced that the nature of the employment may create an implied agreement not to quit, at least, without reasonable notice, but this exception to the general doctrine remains to become generally established. It has been seriously questioned whether this right to quit one's employment equally exists in a case of a combination to so quit employment or discontinue working. In other words, the question is whether strikes are legal, for we define a strike as a simultaneous quitting of employment by a number of employees in pursuance of agreement. Apart from the lurking idea, already considered, that an act entirely lawful if done by a single individual may be unlawful by reason of being done in pursuance of a combination of individuals to do the same act it is difficult, on principle, to discover any illegality in a strike, as we have just defined it, and this is the view that has been generally adopted in this country."

And the author, after discussing the doctrine of the English courts relative to combinations among workmen, and after eliminating the question of physical violence and unlawful methods which sometimes accompany strikes, sums up by saying on page 36:

"Applying, however, what has already been said, we may say here that (apart from the existence of contractual liability) the existence of the relation of employee justifies, as a natural incident or outgrowth of such relation, the quitting of employment, whether singly or in a combination, and whether or not with the intent to injure the employer (or any other person)."

*Parkinson v. Building Trade Council,* 154 Cal. 581, 98 Pac. 1027, 21 L. R. A. (N. S.) 550, 16 Ann. Cas. 1165; *Lindsay & Co. v. Montana Federation of Labor,* 37 Mont. 264, 96 Pac. 127, 18 L. R. A. (N. S.) 707, 127 Am. St. Rep. 722; 24 Cyc. 821 and note 41 of authorities; *Meier v. Speer,* 96 Ark. 618, 132 S. W. 988, 32 L. R. A. (N. S.) 792; *Pierce v. Union,* 156 Cal. 70, 103 Pac. 324.

The case of *Pickett v. Walsh,* 192 Mass. 572, 78 N. E. 753, 6 L. R. A. (N. S.) 1067, 116 Am. St. Rep. 272, 7 Ann. Cas. 638, considers when a strike will be illegal, and an extended discussion of the question will be found both in the opinion and in the note collecting the authorities.

A petition based on the charge that the plaintiff, a nonmember of a labor union, was discharged from his employment because of the demands therefor made by the authorized agents and committees of a labor organization, who informed the common employer that if such nonunion man was not discharged, the union men would strike, does not state a cause of action for damages against either the labor organization or the individual members thereof, and a demurrer to such petition was properly sustained.

The cause should be affirmed.

By the Court: It is so ordered.