## SHAUGHNESSEY ET AL. *v.* JORDAN ET AL.

[No. 22,572.   Filed February 25, 1916.]

1. INJUNCTION.—*Parties.*—*Appeal.*—In a suit against named leaders of a labor union and the members who were "too numerous to join as parties" to enjoin interference by them with the plaintiffs' business and employees, where the decree was entered enjoining the named defendants, and providihg, as to the members who were neither served with progess nor appeared, that it should be operative from and after actual notice, only those named and served with process were proper parties to an appeal from such decree, though those who neither were served with process nor appeared in the trial court could be punished for contempt for a violation of the court's order.   pp. 501, 503.

2. INJUNCTION.—*Parties.*—*Scope of Decree.*—Where an injunction is decreed against a principal, his agent or a third party may be punished for contempt in violating the decree, after actual knowledge of its existence, regardless of any provision for notice in the decree to those not served with process.   p. 502.

3. INJUNCTION.—*Class Suits.*—*Labor Unions.*—Class suits involving numerous parties are of two kinds, being designated as "true" where the suit relates to a fund or property over which the court may and does acquire jurisdiction and in which numerous persons are interested, and as "spurious" where no fund or particular property is in question and only a personal liability is involved; and suits for injunctions against involuntary associations, such as labor unions, are of the latter class.   p. 502.

4. INJUNCTION.—*Labor Unions.*—*Scope of Decree.*—In a suit against the leaders and members of a labor union for injunction, the decree against those served with process can not be effective against those not served nor appearing, unless and until formally brought into court by some supplemental process.   p. 502.

5. INJUNCTION.—*Strikes.*—*Decree.*—*Failure to Request Modification.* —In a suit to enjoin members of a labor union from interfering with plaintiff's business or employes, where there was evidence to warrant the trial court in finding that there had been resort to violence and threats of violence, the decree against defendants could not be disturbed on the ground that among other things it enjoined defendants from using peaceful methods in continuing the strike and carrying out their purposes, even though such provisions were erroneous, in the absence of a motion by defendants to modify the decree.   p. 508.

6. CONSTITUTIONAL LAW.—*Strikes.*—*Equal Protection of Laws.*— The rights of employers under the 14th amendment of the Federal Constitution, prohibiting the states from depriving any person of liberty or property without due process of law or denying him the equal protection of the laws, are not infringed upon by the rule that employes may combine and by prearrangement quit their employment and by peaceful picketing and persuasion carry out their purpose to substitute a union for an open shop. p. 509.

7. MONOPOLIES.—*Combinations by Labor Unions.*—*Strikes.*—*Statutes.*—The act of 1907 (Acts 1907 p. 490, §3866 *et seq.* Burns 1914) declaring that every combination in the form of a trust shall be unlawful, but that none of the provisions of the act shall limit the powers, rights or privileges now existing or conferred by law upon any person association or corporation, was not intended to limit or control any right of a member or members of a labor union to peacefully strike or combine for the betterment of their conditions. p. 510.

8. INJUNCTION.—*Strikes.*—*Action.*—*Evidence.*—In a suit to enjoin members of a labor union from continuing a strike, where it was contended that violence was resorted to, evidence of a resolution offered by one of the defendants at a convention of the organization declaring that, as the employers controlled the courts, political action was necessary, and denouncing the machinery of the government, was incompetent, and, in view of other evidence in the case, its admission was prejudicially erroneous. pp. 511, 514.

9. APPEAL. — *Review.* — *Erroneous Admission of Evidence.* — *Presumptions.*—Where evidence of an influential character is erroneously admitted the presumption is that it is harmful, but a consideration of the record may sometimes overcome such presumption. p. 514.

10. INJUNCTION.—*Strikes.*—*Action.*—*Evidence.*—In a suit to enjoin the members of a labor union from continuing a strike, where charges of violence were made, evidence that a strike breaker telephoned the employer that he had met the pickets and that he would not return to work because he did not want to get in trouble or get hurt, was erroneously admitted in the absence of competent evidence of the basic fact on which the declaration must rest, and in the absence of evidence to show when the declaration was made. p. 514.

11. EVIDENCE.—*Opinion Evidence.*—*Conclusion of Witness.*—In a suit to enjoin the continuance of a strike, where violence was charged, testimony by the employer that the strike had injured his business was erroneously admitted, being the conclusion of the witness as to an ultimate fact in issue. p. 516.

From Marion Circuit Court (22,398); *W. W. Thornton*, Special Judge.

Action by Arthur Jordan and others against Peter J. Shaughnessey and others. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*Salem D. Clark* and *Martin M. Hugg*, for appellants.

*Charles Martindale*, for appellees.

MORRIS, C. J.—Action by appellees, partners, doing a manufacturing business under the firm name of Keyless Lock Company, against appellants, labor union members, for an injunction and damages. The court decreed the injunction prayed · and rendered judgment for damages against appellants in the sum of $6,000. Jurisdiction of the appeal is here because a constitutional question is presented. Subd. 1, §1392 Burns 1914, Acts 1907 p. 237.

Appellees have filed a motion to dismiss this appeal for defect of parties. In the title of the complaint appear the names of appellants as de-

1. fendants, followed by this, "and the members of the International Molders Union of North America, who are too numerous to join as parties defendant to this action; The members of Iron Molders Union No. 17, who are too numerous to join as parties defendant * · * * . The members of Iron Molders Union No. 56, who are too numerous to be joined as parties defendant * * * ". Appellees caused the issuance and service of summons· on appellants as the representatives of all the members of the three unions, but this summons was quashed. Following the judgment against appellants, there is a finding by the trial court of the names of several hundred members of the three unions· who were not served with process, and this finding is followed by an order that the decree shall be operative on such named persons from and after actual notice thereof, and that appellees may, if

they see fit, at their own cost, cause notice of the decree to be served on such named persons. The answer to the complaint, by appellants, was filed by them solely as individuals, and there is no judgment against any one of them in a representative capacity. This appeal was taken in vacation, and it is appellees' theory that appellants must have made parties to the appeal the hundreds of members of the three unions, not necessarily by name, but in the names of one or more of appellants, as representatives of such members. Appellees' theory is wholly untenable. Where an injunction is decreed

2. against a principal, his agent or a third party may be punished for contempt in violating the decree, after actual knowledge of its existence, regardless of any provision for notice in the decree to those not served with process. *Anderson* v. *Indianapolis Drop Forging Co.* (1904), 34 Ind. App. 100, 72 N. E. 277; *In re Lennon* (1897), 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110. Class suits, involving numerous parties, are of two kinds,

3. true and spurious. 1 Street, Fed. Eq. Prac. §§547, 548. Where the suit relates to a fund or property over which the court may and does acquire jurisdiction, and numerous persons are interested in the property, one may sue or defend as a representative of others with like interests. This constitutes a true class suit. On the other hand, where no fund or particular property is in question, and only a personal liability is involved, the suit is not, in a proper sense, a true class one, but what the text writers call spurious. Suits against involuntary associations, such as labor unions, for injunctions, belong to this spurious class, and the de-

4. cree against those served with process can not be effective against those not served nor appearing, unless and until formally brought into

court by some supplemental process. 1 1. Street, Fed. Eq. Prac. §552. No one of the members of the various unions, not served with process nor appearing in the court below could have properly appealed from the judgment rendered, though each of them, or persons not members of any unions might have been punished for contempt for violating the court's order, and, from the judgment for contempt, but no other might have appealed. *Bessette* v. *W. B. Conkey Co.* (1904), 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997. Since these persons had no right of appeal from the judgment in question, it must follow that they are not necessary parties here. The labor unions mentioned were not parties to the action. *Karges Furn. Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 75 N. E. 877, 2 L. R. A. (N. S.) 788, 6 Ann. Cas. 829. The motion to dismiss is overruled.

The error here assigned is the overruling of appellants' motions for new trials. Each motion embraces more than 200 alleged grounds, and each reason assigned therein is sought to be presented here for review. The complaint, among other things, alleges that on and prior to October 31, 1912, appellees were engaged, to a large extent, in manufacturing locks, and in connection with their business, they operated a foundry with sixty employes engaged therein; that the foundry department was operated as an "open shop" wherein they employed both union and nonunion molders. This is followed by allegations in relation to the organization, management and purposes of three voluntary labor organizations, Iron Molders Unions Nos. 56 and 17, of Indianapolis, and International Molders Union of North America. It is averred further that appellants were members of one or more of said unions and that certain of appellants held responsible positions in the management thereof; that appellants agreed

and conspired with one another, and with various other members and officers of said unions, and in pursuance of the orders of the executive officers of said unions acting under the rules of their organizations, to compel appellees to "unionize" their foundry; that through appellant Frank Lewis they notified appellees to unionize the foundry, which notice appellees disregarded; that the conspirators thereupon, pursuant to said agreement, threatened appellees' shop with a strike, which threat was unheeded by appellees; that thereupon, on November 12, 1912, appellants and their fellow conspirators caused appellees' union employes to quit their employment and declared a strike against the factory; that in furtherance of the conspiracy they established professional pickets about the foundry, employed by said unions, and that these pickets, acting for appellants and the unions, threatened, intimidated, and violently assaulted appellees' employes working in the foundry and struck and beat them; that because of said conduct appellees' employes, working in the foundry, threaten to, and will, quit their employment unless protected from such threats, intimidation and violence. It is alleged that appellees have already suffered damages to the extent of $10,000 because of appellants' acts, but that an action at law will not bring adequate relief because appellants and those acting with them are all insolvent. On the final hearing judgment for $6,000 was awarded appellees, and appellants, thirteen in number, were enjoined (1) from continuing the strike for the purpose of compelling a closed shop, (2) from, by any means, peaceable or otherwise, coercing appellees to establish a union shop, (3) from compelling or inducing, by violence or threats thereof, appellees' employes to leave their service, (4) from preventing, by violence or threats thereof,

any person from entering or continuing in such service, (5) from congregating on or about appellees' premises or streets and places adjacent for the purpose of intimidating appellees' employes or preventing or hindering them from their duties or for the purpose of inducing, by abusive epithets, threats or intimidation, employes to leave their service, or other persons from entering thereon, (6) from persuading, peaceably or otherwise, any person from freely entering on or continuing in appellees' service for the purpose of compelling appellees to establish a union shop, (7) from congregating upon, or about the appellees' premises, or the sidewalks, streets, alleys or approaches, adjoining or adjacent to, or leading to said premises, or from picketing appellees' said place of business, or the homes or boarding houses, or residences of the said appellees' employes, (8) from interfering with the said appellees' employes, in going to and from their work, (9) from going singly or collectively to the homes of the said appellees' employes for the purpose of intimidating or threatening them, or placing them in fear of injury to their business or property, (10) from intimidating or threatening in any manner the wives and families of said employes at their homes or elsewhere, (11) from doing any of the aforesaid or any other act for the purpose of compelling or inducing, or attempting to compel or induce, the appellees against their will, and without other cause, to discharge from their employment nonunion workmen and employ only members of said unions, and (12) from doing any of the aforesaid or any other acts for the purpose of compelling or inducing, or attempting to compel or induce, the plaintiffs, by threats, intimidation, force or violence, directed against the appellees' persons or property, or against the employes of appellees, and against the will of

the appellees, to employ or discharge any person or persons wh'omsoever, and especially to employ members of said unions, or to discharge employes who are not members of said unions.

It is earnestly contended by appellants that the decision of the court is contrary to law and unsupported by sufficient evidence. They rely especially on *Karges Furn. Co.* v. *Amalgamated, etc., Union, supra,* and claim that under that decision laborers have a right to combine and strike and picket the employer's factory, even though damage does result to the employer, provided that peaceable means only are used and force, intimidation, fraud and malice are absent, where, as here, the employment is at will, and no breach of contract of service is involved; that what one may lawfully do may be done by any number of persons in combination. On the other hand appellees controvert this latter proposition and say that an act harmless when done by one, like quitting employment, when done by many acting in concert for the purpose of compelling the employer to employ only union men becomes a public wrong and takes on the form of a conspiracy, which, if hurtful to the employer, should be prohibited. On this latter question American courts are sharply divided. See *National Protective Assn.* v. *Cumming* (1902), 170 N. Y. 315, 63 N. E. 369, 88 Am. St. 648, 58 L. R. A. 135; *Plant* v. *Woods* (1900), 176 Mass. 492, 57 N. E. 1011, 79 Am. St. 330, 51 L. R. A. 339; *Vegelahn* v. *Guntner* (1896), 167 Mass. 92, 44 N. E. 1077, 57 Am. St. 443, 35 L. R. A. 722; *Commonwealth* v. *Hunt* (1842), 45 Mass. 111, 132, 38 Am. Dec. 346; *Kemp* v. *Division No.* 241 (1912), 255 Ill. 213, 99 N. E. 389, Ann. Cas. 1913 D 347; *Pickett* v. *Walsh* (1906), 192 Mass. 572, 78 N. E. 753, 6 L. R. A. (N. S.) 1067, 116 Am. St. 272, 7 Ann. Cas. 638; *Bausbach* v. *Reiff* (1914), 244 Pa.

St. 559, 91 Atl. 224, L. R. A. 1915 D 785, Ann.
Cas. 1915 C 421; *Roddy* v. *United Mine Workers*
(1914), 41 Okl. 621, 139 Pac. 126, L. R. A. 1915 D·
789; *State, ex rel.* v. *Huegin* (1901), 110 Wis. 189, 85
N. W. 1046, 62 L. R. A. 700; *Iron Molders Union* v.
*Allis-Chalmers Co.* (1908), 166 Fed. 45, 91 C. C. A.
631, 20 L. R. A. (N. S.), 315; *Rhodes Bros. Co.* v.
*Musicians, etc., Union* (1915), 37 R. I. 281, 92 Atl.
641, L. R.A. 1915 E 1037; *State* v. *Van Pelt* (1904),
136 N. C. 633, 49 S. E. 177, 68 L. R. A. 760, 1 Ann.
Cas. 495. In the Karges case, *supra*, it was de-
clared that "Whatever one man may do, all men may
do, and what all may do singly they may do in con-
cert, if the sole purpose of the combination is to ad-
vance the proper interests of the members, and it is
conducted in a lawful manner. * * * It may,
therefore, be said that employes, under no contract-
ual restraint, may lawfully combine, and by prear-
rangement quit their employment in a body, for the
purpose of securing from their employers an ad-
vance in wages, shorter hours, or any other legiti-
mate benefit, even though they know at the time that
such action will be attended with injury and dam-
age to the business of their employer, provided the
strike is carried on in a lawful manner—that is in a
manner free from force, intimidation and false rep-
resentation. * * * The law having granted
workmen the right to strike to secure better con-
ditions * * * grants them also the use of those
means and agencies, not inconsistent with the rights
of others, that are necessary to make the strike ef-
fective. This embraces the right to support their
contest by argument, persuasion, and such favors
and accommodations as they have within their con-
trol." The opinion cites with approval the opinion of
Parker, C. J., in *National Protective Assn.* v. *Cum-
ming, supra*, 331, wherein it is said "A labor organi-

zation is endowed with precisely the same legal right as is an individual to threaten to do that which it may lawfully do."

Counsel for appellees assail some of the doctrines declared in the Karges case, especially that which recognizes the right of two or more laborers to do by agreement what one may lawfully do in the absence thereof. That American authorities are divided on this question has already been noted. That appellees' position is supported by early English authorities, covered by centuries of time, is unquestioned. However, in 1906, by act of parliament, it was declared in an act entitled "An act to provide for the regulation of Trades Unions and Trades Disputes," that "An act done in pursuance of an agreement or combination by two or more persons shall, if done in contemplation or pursuance of a trade dispute, not be actionable unless the act, if done without any such agreement or combination, would be actionable." 44 Law Reports Stat. (1906), 246. Indiana like New York, has adopted, with enumerated exceptions, the common law of England. §236 Burns 1914, §236 R. S. 1881. In *National Protective Assn.* v. *Cumming, supra,* an opinion delivered by Parker, C. J., the New York Court of Appeals declared that the early English decisions on labor questions, "are hostile not only to the statute law of this country, but to the spirit of our institutions." This opinion, as above noted, was approved by this court in the Karges case, *supra.*

The decree here, among other things, enjoins appellants from peaceably or otherwise continuing the strike for the purpose of unionizing the shop; 5. from peaceably persuading any one from entering or continuing in appellees' service and from peacefully congregating on the sidewalks; and streets adjoining or adjacent to appellees' place of

business and from picketing in any manner, the place or the residences of employes. Conceding that these provisions, and possibly others, are erroneous, the fact remains that appellants made no motion to modify the decree and eliminate therefrom the erroneous provisions. There was evidence on behalf of appellees that appellants resorted to assaults and violence in the picketing of the shop, and, while appellants testified that any force on their part was exerted in self-defense, it was for the trial court to weigh the evidence. It is not contended by appellants that a strike pursued by violence or threats thereof can be lawful. There was evidence from which the court was warranted in finding that appellants resorted to such methods. Consequently we cannot say that the decision of the trial court is without support in the evidence. If certain provisions of the decree were erroneous, appellants should have moved for its modification. *City of Gary* v. *Much* (1913), 180 Ind. 26, 101 N. E. 4.

Appellees contend that the facts in issue here involve a consideration of the provision of the 14th amendment to the Federal Constitution, which 6. prohibits the states from depriving any person of liberty or property without due process of law or denying him the equal protection of the laws; that appellants' contentions here involve a conflict with such provision because violative of the liberty of action and freedom of contract contemplated by it. In support of such proposition *Coppage* v. *State* (1915), 236 U. S. 1, 35 Sup. Ct. 240, 59 L. Ed. 441, L. R. A. 1915 C 960, is cited. Appellants here are claiming nothing beyond what is authorized by the decision of this court in the Karges case, *supra*, and, if the doctrines there declared are not in conflict with such constitutional provision the question presented is not here involved.

In the Coppage case, *supra*, a criminal law of Kansas was held invalid which prescribed a penalty against employers requiring employes, as a condition of service, to agree not to become, or remain, members of labor unions. The opinion cites with approval *People* v. *Marcus* (1906), 185 N. Y. 257, 77 N. E. 1073, 113 Am. St. 902, 7 L. R. A. (N. S.) 282, 7 Ann. Cas. 118, which held invalid a similar statute of New York. In the latter case, the New York Court of Appeals cited as authority for its action there, the case of *National Protective Assn.* v. *Cumming, supra*, which is not only cited with approval in the Karges case, but declares the same doctrines with reference to rights of members of labor unions, as are therein sanctioned. We are of the opinion that the Coppage case, *supra*, in no wise conflicts with any rule declared in the Karges case, *supra*, and we further hold that the constitutional provision in question is not involved here.

Appellees further invoke the protection of the provisions of the act of our General Assembly of 1907, entitled "An act to protect trade and commerce against unlawful restraints and monopolies, and against collusion in the letting of contracts for public and private work, providing penalties," etc. Acts 1907 p. 490, §§3866-3877 Burns 1914. They claim that this statute includes the same prohibitions enumerated in §§1 and 2 of the Act of Congress of July 2, 1890, known as the Sherman Anti-trust Act, 26 Stat. at Large 210, and that the latter act has been construed by the Supreme Court of the United States as applying to such acts of members of labor unions as are here involved. Section 1, of said act of 1907 (§3866 Burns 1914), contains the following provisions: "That every scheme, design, understanding, contract, combination in the form of a trust or otherwise, or

conspiracy in restraint of trade or commerce, or to create or carry out restrictions in trade or commerce, or to deny or refuse to any person or persons full participation, on equal terms with others, in any telegraphic service transmitting matter prepared or intended for public use, or to limit or reduce the production, or increase or reduce the price of merchandise or any commodity, natural or artificial, or to prevent competition in manufacturing, within or without this state, is hereby declared to be illegal, *but none of the provisions of this act shall be construed to apply to (or) repeal, modify or limit, or make unlawful any of the powers, rights or privileges now existing or conferred by law upon any person, copartnership, association or corporation."* (Italics ours.) The Karges case, *supra,* was decided in October, 1905, and the said act of 1907, was passed at the succeeding session of the legislature. In view of the provisons of §1, *supra,* which we have italicized, we do not feel called on to declare what effect was intended by said act, but we are satisfied that it was not the legislative purpose, by the enactment, to thereby limit or control any right of a member, or members, of a labor union, to do what was declared lawful in the Karges case.

Various questions are presented on the rulings of the court on the admission of evidence. Appellant Lewis was a member of said union No. 56, and was its delegate to the convention of the International Molders' Union of North America, held in Milwaukee, Wisconsin, from September 23, to October 11, 1912. At such convention he offered the following resolution: "Resolution No. 82—By Union No. 56, Indianapolis, Ind.: Be it Resolved, that on account of the uncertainty of employment, and the bribing of the courts by the employers during the times of labor troubles, conflicts or

controversies, that we, the I. M. U. of N. A., adopt
the tactics of political action. At the present time
the worker does not own his job. He may own his
tools, but he can only use them as long as the em-
ployer lets him. If the worker is not satisfied they
force him to be whether he likes it or not, either by
the want of the necessaries of life or by the officers
of law which they own at the present time and con-
trol; namely, the police, the detective forces, the
militia and the regular army and navy if necessary.
Labor creates all wealth and does not get in return in
what they call wages on an average only one-fifth
of what they create." The resolution was referred
to a committee, and it does not appear that it was
ever reported to the convention. Over the objec-
tion of all appellants, and also that of all except
Lewis, this resolution was admitted in evidence in
behalf of appellees in the presentation of their
original case. We are of the opinion that such ac-
tion was erroneous and prejudicial to all appellants,
including Lewis. The ruling is defended by appel-
lees' counsel because the declarations and sentiments
shown by the resolution "breathed a resistance to
courts and police authorities, tending to prove a
disposition to violence and to commit the wrongs
and offenses charged in the complaint," and *Rein-
hold* v. *State* (1892), 130 Ind. 467, 30 N. E. 306,
is cited as authority, but we are of the opinion that
the case cited is not in point. In *Porter* v. *State*
(1910), 173 Ind. 694, 703, 91 N. E. 340, which was a
prosecution for murder, it was held error to admit in
evidence a declaration by defendant that he was
"ornery" and that there was nothing "too  *  *  *
low down for him to do." In *Dunn* v. *State* (1904)
162 Ind. 174, 181, 70 N. E. 521, a case of alleged
homicide of a female—the trial court admitted in
evidence a declaration by the defendant that he

had been guilty of adultery with a woman, other than deceased, under circumstances revealing the defendant's dissolute character. In holding the admission of this evidence erroneous it was said: "It is a rule as old as the law itself, subject to numerous exceptions * * * that substantive evidence in both civil and criminal cases must be confined to the facts embraced within the issues joined and that no such evidence is competent that does not form a link in the chain of proof which naturally and reasonably tends to establish some material fact in the case as made between the parties. * * * And the law will not permit the State to depart from the issue and introduce evidence of other extraneous offenses or misconduct that has no natural connection with the pending charge, and which are calculated to prejudice the accused in his defense." In *Miller* v. *State* (1910), 174 Ind. 255, 261, 91 N. E. 930, the trial court admitted threats by defendant against certain witnesses for the State that had testified against him. In holding the ruling erroneous it was said: "Counsel * * * seek to justify the admission * * * on the ground that it was competent as showing that appellant was a man of violence and was vindictive. It certainly requires no extended argument to prove that this evidence was not competent for the reason advanced by the State."

There must be some causal relation between the offered declaration and the matter in issue. The complaint here alleges a violent interference with appellees' business. The declaration of Lewis was to the effect that resort should be had to the "tactics of political action." Even if his disposition to violence had been in issue it would be difficult to perceive the causal connection therewith of political

action. The declaration does however disclose a baseless charge against judicial officers and was well calculated to place a judge, even unconsciously, in an attitude hostile to Lewis' cause of defense. It may also, in its sweeping charges against not only judges but also other officers, denote a character not above reproach; but neither his character nor that of his associates was in issue, and even had it been, proof thereof by specific acts or declarations was incompetent. One of the material allegations of the complaint was the perpetration of acts of violence on the part of appellants. Where evidence of influential character, on a material point, is erroneously admitted the presumption is that it is harmful. Davis v. Cox (1912), 178 Ind. 486, 493, 99 N. E. 803, and authorities cited; Porter v. State, supra; Cleveland, etc., R. Co. v. Case (1910), 174 Ind. 369, 91 N. E. 238; Miller v. State, supra. In the latter case, the opinion in Reed v. State (1895), 141 Ind. 116, 40 N. E. 525, which apparently held that in criminal cases error in the admission of such evidence must be shown harmful by the record to become reversible, was modified. It often happens, of course, that a consideration of the record overcomes the presumption of the prejudicial effect of the erroneous admission of evidence. Ohio Valley Trust Co. v. Wernke (1913), 179 Ind. 49, 55, 56, 99 N. E. 734. Here, however, there was sharp conflict in the evidence on all material issues, and such presumption is not overcome.

It is admitted by appellants that after the strike was declared in November, 1912, they rented a room across the street from, and opposite to, appellees' foundry, where they stationed pickets, and that the latter, on the streets, accosted employes who took the places of the strikers in the foundry, and peaceably persuaded, or

attempted to persuade, them to quit appellees' service so long as an open shop might be maintained. Appellee Baxter, to show injury to appellees' business, testified that on several occasions he had seen new employes followed down the street by the pickets, and the former would not afterwards appear for work. He was further permitted, over proper objections by appellants, to testify that a new employe from Omaha, Nebraska, name unknown, had been employed at high wages; that he went out of the foundry "and afterwards telephoned me that he had seen these men" (pickets) and "stated that he had met these men, or that they had approached him, and that he didn't want to get into any trouble or get hurt, and that he wouldn't come." Appellants objected to the telephone conversation because it was hearsay, and out of the presence of appellants, and because appellants could not meet it in any way. Appellee Baxter did not see the Omaha man after he left the foundry, and did not see him in the presence of the pickets. It is not shown what time elapsed between the leaving of the foundry and the telephone conversation. The evidence of the implied threat of violence by the pickets is based wholly on the Omaha man's telephone statement. Counsel for appellees seek to justify the court's action on the theory that the evidence was admissible as a part of the *res gestae*, and cites *Ohio, etc., R. Co.* v. *Stein* (1892), 133 Ind. 243, 31 N. E. 180, 32 N. E. 831, 19 L. R. A. 733, and *Murray* v. *Boston, etc., R. Co.* (1903), 72 N. H. 32, 54 Atl. 289, 101 Am. St. 660, 61 L. R. A. 495. The authorities cited do not support the proposition. The object sought by the evidence was proof that the Omaha man did not return to work because he was intimidated by the pickets on some prior occasion when he met them. But there was no proof that he ever met the pickets

except his declaration over the telephone, and consequently no competent evidence of the basic fact on which the illustrative declaration must rest. 10 R. C. L. 978; *Keesling* v. *Watson* (1883), 91 Ind. 578; *Whitney* v. *Wagener* (1901), 84 Minn. 211, 87 N. W. 602, 87 Am. St. 351; 16 Cyc 1169; *People* v. *Vernon* (1868), 95 Am. Dec. 66, note. Even had the act of meeting with the pickets been proven by competent evidence, the declaration, which may have been made the day after meeting them, was too remote in point of time. The court erred in admitting the evidence.

The following question was asked appellee Baxter, while on the witness stand: "Now state whether from this strike down to date, your business has been in any way interfered with or interrupted by reason of this strike and the calling out of the men in your foundry?" Appellants objected because the question called for a conclusion, and that on an ultimate fact in issue. The objection was overruled and the witness answered "It certainly has." The objection should have been sustained. The question sought an answer, comprehending one of the ultimate facts in issue to be determined by the court.

It is not likely that the other questions presented will arise on another trial, and they are not considered. For errors in the admission of evidence, the judgment is reversed with instructions to grant appellants' motions for a new trial.

NOTE.—Reported in 111 N. E. 622. As to right of nonunion employes to enjoin strike by union coemployes, see Ann. Cas. 1913 D 369. For a discussion of injunction as remedy against injury to business or property by strikers, see 4 Ann. Cas. 783. See, also, under (1) 3 C. J. 1004, 1005; 2 Cyc 757; (2) 22 Cyc 1012; (3) 30 Cyc 132, 135; (4) 22 Cyc 963, 964; (5) 22 Cyc 971; (8) 22 Cyc 938; (9) 4 C. J. 912; 3 Cyc 386; (10) 16 Cyc 1192; (11) 17 Cyc 45.