## *Ex parte* EVA SWEITZER.

No. A-2856.   Opinion Filed February 17. 1917.

(162 Pac. 1134.)

1. **CONSPIRACY—Picketing—Statute.** ·Section 3764. Rev. Laws 1910, construed, and **held,** that it stays the hand of both civil and criminal process from interfering with "picketing," or other peaceable and legitimate endeavors of labor, to further their interest in trade disputes between themselves and their employers.

2. **MUNICIPAL CORPORATIONS—Picketing—Prohibition.** In law we cannot do indirectly that which may not be done directly; and since the city commissioners cannot directly prohibit picketing in furtherance of trade disputes, they cannot accomplish that end indirectly or incidentally.

3. **MONOPOLIES—Trade Unions—Organization—Right.** The trend of legal thought of modern times is that since capital, consisting of money and property, is organized to further its interests, labor, consisting of brains and muscle, may organize, and use any peaceable and legitimate means to obtain a fair share in the distribution of the earnings which are the joint product of capital and labor.

Application of Eva Sweitzer for writ of *habeas corpus.*   Writ allowed, and petitioner discharged.

*Giddings & · Lillard,* for petitioner.

*B. D. Shear, A. T. Boys,* and *Frank N. Watson,* for respondent.

BRETT, J. This matter comes up on the petition of Eva Sweitzer for writ of *habeas corpus,* alleging that she is unlawfully restrained of her liberty by W. B. Nichols, chief of police of Oklahoma City, and praying that she be discharged.

At the time the petitioner was arrested, she was doing picket duty in front of the Lyric Theater. At her trial in the municipal court, the arresting officer testified concerning the cause of her arrest as follows:

"Q. State what she was doing at that time? A. Walking up and down the outer edge of the walk. Q. In front of the theater? A. Yes, sir. Q. Was she holding a conversation with any person? A. She was not holding a conversation. She was just walking up and down. I think I heard her say: 'This theater is unfair to organized labor.' Q. Did she have a badge displayed on her sleeve? A. Yes, sir. Q. What did it say? A. I cannot say."

On cross-examination he testified that she was not talking loudly, but was conducting herself in a ladylike manner; and that the only reason he had for arresting her was "because she was picketing." It was shown that she is a laboring woman, and a member of a labor union. And as part of the proceedings in the municipal court counsel for petitioner and the city entered into an agreement as follows:

"It is mutually agreed by the parties that a trade dispute existed at the time of the arrest of the defendant, between the employers of the Lyric Theater and its former employees; and the picketing done by the defendant was in the furtherance of that trade dispute."

The city insists that, regardless of the fact that the petitioner was picketing in furtherance of a trade dispute, her conduct violated City Ordinance No. 1859, adopted October 10, 1916, which provides:

"Section 1. It shall be unlawful for any person, or persons to walk, stand or loiter on any street, sidewalk, alley or public place within the city of Oklahoma City, in front of, or near to any place of business, and call out, speak to, or attract the attention of any person along such street, sidewalk, or alley or public place, with the intent to induce such person to patronize or not to patronize such place of business.

"Sec. 2. It shall be unlawful for any person to walk or stand or loiter along or upon any street, sidewalk, alley or public place in said city and display in any manner any sign or banner to the persons along such streets, sidewalks, alley or public place, calling to the attention of such person that they should or should not patronize any place of business located within the said city of Oklahoma City."

Section 3 fixes a penalty for the violation of the provisions of this ordinance at a fine of not less than $10 nor more than $50, or confinement in the city jail for a period not exceeding 30 days, or both such fine and imprisonment; and section 4 declares an emergency.

At the trial had in the municipal court, the petitioner was found guilty by the municipal judge, and fined $10, which she refused to pay, and filed her petition for writ of *habeas corpus* in this court.

1. The issue presented is whether or not, in this case, the judgment of the municipal court can be enforced.

It is our opinion that it cannot. First, because the very thing for which the petitioner was arrested and convicted is sanctioned by statute; and the statute further

declares that it shall not "be deemed criminal." Section 3764, Rev. Laws 1910, provides that:

"No agreement, combination or contract by or between two or more persons to do or procure to be done, or not to do or procure not to be done, any act in contemplation or furtherance of any trade dispute between employers and employees, shall be deemed criminal, nor shall those engaged therein be indictable or otherwise punishable for the crime of conspiracy, if such act committed by one person would not be punishable as a crime, nor shall such agreement, combination or contract be considered as in restraint of trade or commerce, nor shall any restraining order or injunction be issued with relation thereto."

Counsel for respondent, however, insist that this statute is not applicable, but that its prime object is to exempt labor combinations, formed for the furtherance of trade disputes, from the charge of conspiracy. But a careful examination of the statute shows that it contains four separate and distinct provisions, each independent of the others. These provisions are:

(1) That "No agreement, combination or contract by or between two or more persons to do or procure to be done, or not to do or procure not to be done, any act in contemplation or furtherance of any trade dispute between employers and employees, shall be deemed criminal." (2) "Nor shall those engaged therein be indictable or otherwise punishable for the crime of conspiracy, if such act committed by one person would not be punishable as a crime." (3) "Nor shall such agreement, combination or contract be considered as in restraint of trade or commerce." And (4) "nor shall any restraining order or injunction be issued with relation thereto." And concludes, "provided, nothing in this article shall be construed to authorize force or violence."

We think no other construction can be placed upon this statute than that it stays the hand of both civil and criminal process from interfering with the peaceable and legitimate endeavors of labor to further their interests in trade disputes between them and their employers.

But counsel for respondents say:

"We are not dealing with labor unions or their rights in this case, but with an individual infraction of an ordinance which prohibits the doing of a certain thing."

But counsel slipped this contention entirely from under themselves, when they stipulated in open court that:

"It is mutually agreed by the parties that a trade dispute existed at the time of the arrest of the defendant, between the employers of the Lyric Theater and its former employees, and the picketing done by the defendant was in furtherance of that trade dispute."

Petitioner was therefore not acting in her individual capacity, but in conformity to "an agreement and combination" to do certain things "in furtherance of that trade dispute," and was therefore protected by this statute, in the peaceable performance of her mission, from interference by either the civil or criminal law.

2. But counsel for respondent further insist that the statute is not applicable because:

"The ordinance prohibits picketing only incidentally, and its scope and effect are much broader. It prohibits as well the merchant or theatrical manager from filling sidewalks and streets adjacent to his place of business with pedestrians, who annoy passers-by with importunate solicitations."

But the learned counsel certainly know that in law we cannot do indirectly that which may not be done directly. If the city commissioners cannot directly pro-

hibit picketing in furtherance of a trade dispute, they certainly cannot accomplish that end indirectly, or, as counsel put it, "incidentally." As to whether the ordinance may be effective in prohibiting "the merchant or theatrical manager from filling the sidewalks and streets adjacent to his place of business with pedestrians who annoy passers-by with importunate solicitations," we are not now concerned; but we do say, in the face of the statute, it cannot be enforced in the case at bar.

3. The constitutionality of the statute is upheld by this court in *State v. Coyle et al.,* 7 Okla. Cr. 50, 122 Pac. 243, so the only duty that devolves upon us at this time is to construe its provisions. And, as stated above, its provisions are clear, specific, and comprehensive, and shield labor combinations from the interference of either civil or criminal process in their peaceable and legitimate endeavors to further their interests in trade disputes between themselves and their employers.

As stated in *Ames v. Union Pac. R. Co.,* (C. C.) 62 Fed. 7:

"The period of compulsory personal service, save as a punishment for crime, has passed in this country. In this country it is not unlawful for employees to associate, consult, and confer together with a view to maintain or increase their wages, by lawful and peaceful means, any more than it was unlawful for the receivers to counsel and confer together for the purpose of reducing their wages. A corporation is organized capital; it is capital consisting of money and property. Organized labor is organized capital; it is capital consisting of brains and muscle. What it is lawful for one to do, it is lawful for the other to do. If it is lawful for the stockholders and officers of a corporation to associate and confer together for the purpose of reducing the wages of its employees, or of devising other means of making their investments

profitable, it is equally lawful for organized labor to associate, consult, and confer with a view to maintain or increase wages. Both act from the prompting of enlightened selfishness, and the action of both is lawful when no illegal or criminal means are used or threatened."

And Martin, in his treatise on Modern Laws of Labor Unions (pages 11 and 12), says:

"Organization or combination is a law of human society. It is open to all orders of men who desire to accomplish some lawful purpose through the greater strength and effectiveness which organization offers over individual effort. A very strong reason for permitting labor combinations is this: In an age when vast combinations of capital are common and the number of individual employers of labor greatly reduced, and, in consequence, competition for labor by employers enormously reduced, combination on the part of labor is an absolute necessity if the wage earner is to obtain his fair share in distribution of the earnings which are the joint product of capital and labor. Combination on the part of capital is powerful. Combination on the part of labor is the necessary and desirable counterpart if the battle is to be carried on in a fair and equal way. The natural tendency of combined capital is to seek to obtain the cheapest labor; and, unless resisted by combination on the part of the wage-earner, it would inevitably result in oppression and injustice. As was said by Attorney General Olney: 'To-day the mass of wage-earners can no longer be dealt with by capital as so many isolated units. The time is past when the individual workman is called upon to pit his feeble strength against the might of organized capital.' "

And the doctrine, as above stated, represents the trend of legal thought of modern times, and is specifically reflected in the statute above construed. A number of authorities are cited, and quoted, in State v. Coyle et al., supra, sustaining this doctrine; and we might add a

long list in addition to those there cited, but deem it unnecessary.

For these reasons, and others that might be added, we think the petitioner is unlawfully restrained of her liberty.

The writ is therefore allowed, and the petitioner discharged.

DOYLE, P. J., and ARMSTRONG, J., concur.