## LOCKETT v. CONSTRUCTION TRADES UNION A. F. OF L. et al.

No. 35163.  Nov. 25, 1952.

250 P. 2d 468.

Paul W. Updegraff, Norman, for plaintiff in error.

Russell B. Holloway, Oklahoma City, for defendant in error.

O'NEAL, J. This is an appeal from an order of the district court of Cleveland county, sustaining a demurrer to the plaintiff's evidence on plaintiff's application for a temporary injunction, in an action whereby plaintiff sought to enjoin the named defendants from picketing and conducting a secondary boycott of plaintiff's building under construction known as the New Norman Hotel in the city of Norman, Oklahoma.

The petition substantially alleges that there is no present labor dispute between the plaintiff and the named defendants; that the Construction Trades Union A.F. of L., and the International Hod Carrier's Building and Common Laborer Union of America, acting through the defendant, Frank Phelps, employed the defendant, Don Kinsey, to picket said construction project by carrying a banner stating that the plaintiff, Lloyd Lockett, was unfair to the defendant, Construction Trades Union A.F. of L.

That after the issuing of a temporary restraining order, as prayed for, the defendants, Charlie DeLong, Frank Phelps, R. B. Elliott, J. D. Wilson, W. Tex Taylor, and Tom Rushing, as business managers or agents of their respective trade unions, called off of said construction project all employees, members of their respective unions, under threat of cancellation of their union cards. That each of the individual named defendants have entered into a "secondary boycott" to coerce plaintiff to enter into contracts with third parties covering subcontracts on said building. That plaintiff has no adequate remedy at law, and that unless defendants (except Don C. Kinsey) are restrained from calling off of said project, members of their various unions, and from picketing said project, plaintiff will suffer irreparable injury. The prayer of the petition seeks the issuance of a temporary restraining order.

Upon trial the court denied plaintiff the relief sought, and from the order denying a new trial, the plaintiff appeals.

Plaintiff here asserts:

(a) That the picketing is unlawful as defendants are engaged in a secondary boycott; and the picketing is carried on for the purpose of coercing plaintiff to breach his contract with third parties.

(b) That 40 O.S. 1951 §166 of the Oklahoma Statutes is unconstitutional and, even though constitutional, does not protect defendants in their unlawful activities.

The essential facts for our consideration disclose that Mr. Lockett, a general contractor, was financially interested in the construction of a hotel building in Norman, Oklahoma. He moved a small frame building near the pro-

posed project, which building was used, in part, as a field office. Certain electrical wiring and fixtures were installed in this office building by a non-union electrician.

The defendant, Construction Trades Union A.F. of L., is an unincorporated association whose members comprise union members; that the individual named defendants, as business managers or agents of the named trade unions, employed the defendant, Don Kinsey, to picket the construction project by carrying a banner stating that Lloyd Lockett, the general contractor, was unfair to the defendant, Construction Trades Union A.F. of L.

Mr. Lockett intended to furnish all material going into the building project, and to personally supervise the construction thereof. He entered into some preliminary negotiations with the Waters Electric Company for the purchase of the electrical equipment, and with the Kunkel Plumbing and Heating Company for the plumbing. Both concerns were non-union.

A committee composed of a majority of the member crafts, represented by the unions, called on Mr. Lockett on several occasions, and the employment of the non-union electrician doing electrical work on the office building was discussed. The committee informed Mr. Lockett that the crafts would only work through subcontractors, and the union could not furnish him direct craftsmen for construction work. Mr. Lockett advised the committee that he might organize an electrical and a plumbing company of his own to meet their suggestions. The committee advised him that they could not recognize such a company for an individual job.

Plaintiff attempted to prove that craftsmen were threatened with loss of their union cards if they passed the picket line. Plaintiff failed to make this proof, but by the preponderance of the evidence it is disclosed that no such threats were made. It is further established that the union defendants, or their representatives, were not authorized to cancel union memberships for a violation of a picket line, but that such action could only be taken by the local unions.

The evidence conclusively discloses that the picketing was not carried on upon the plaintiff's premises, and it shows that it was accomplished without any physical force or violence whatsoever.

Plaintiff contends that 40 O.S. 1951 §166 is unconstitutional, and even though constitutional, does not protect defendants in their unlawful acts. Sec. 166 follows:

"No agreement, combination or contract by or between two or more persons to do or procure to be done, or not to do or procure not to be done, any act in contemplation or furtherance of any trade dispute between employers and employees, shall be deemed criminal, nor shall those engaged therein be indictable or otherwise punishable for the crime of conspiracy, if such act committed by one person would not be punishable as a crime, nor shall such agreement, combination or contract be considered as in restraint of trade or commerce, nor shall any restraining order or injunction be issued with relation thereto. Nothing in this article, shall exempt from punishment otherwise than is herein excepted, any person guilty of conspiracy for which punishment is provided by any other law of the State, but such other law shall, as to the agreement, combination and contracts heretofore referred to, be construed as if this Article, was therein contained: Provided, that nothing in this Article, shall be construed to authorize force or violence."

The Criminal Court of Appeals, in State v. Coyle et al., 7 Okla. Cr. 50, 122 P. 243, construed the Act, supra, and held it constitutional and not in contravention of the Fourteenth Amendment, guaranteeing the equal protection of the laws.

In re Sweitzer, 13 Okla. Cr. 154, 162 P. 1134, the same court construing §3764, Rev. Laws 1910, 40 O.S. 1951 §166, held:

"That it stays the hand of both civil and criminal process from interfering with 'picketing,' or other peaceable and legitimate endeavors of labor, to further their interests in trade disputes, between themselves and their employers."

In the case of Holland v. Minnehoma Oil & Gas Co., 184 Okla. 640, 89 P. 2d 764, we construed §10878, O.S. 1931, 40 O.S. 1951 §166. In that case the defendant invoked the statute as a bar to the issuance of an injunction. The defendant's position was held untenable because he had by force and violence taken possession of plaintiff's property. We, therefore, held that the mere fact that there was a labor dispute does not forbid the issuance of an injunction where force and violence is shown to exist.

In the instant case, the court found upon competent evidence that a labor dispute existed between the plaintiff, contractor, and the defendant, Construction Trades Union A.F. of L., at the time the hotel building was picketed and found that no force or violence was employed in such picketing, and that no secondary boycott was established. These findings are amply supported by the record.

The public policy of this state is reflected by this court in its pronouncement in the case of Roddy v. United Mine Workers of America et al., 41 Okla. 621, 139 P. 126. We there held:

"Employees of a coal company, who are members of a labor union, have the right, when involved in a trade dispute between themselves and their employer, and growing out of this relation, to protest to their employer against the employment, or retention in in his employment, of a non-union employee, and to accompany such protest with the statement that if such non-union man is employed, or retained, the union employees will strike —that is, that such employees will simultaneously cease to work for such employer—and if such protest is not heeded, the union men have the lawful right to strike; and if it is heeded, the non-union man who is discharged has no cause of action against either the union as an organization, or the members thereof as individuals."

Plaintiff asserts that the purpose and object of the picketing is unlawful in that defendants are engaged in a secondary boycott and, under such circumstances, picketing may be enjoined.

The record discloses an entire failure of proof that a labor dispute existed as to third parties, or subcontractors. Mr. Lockett testified that no subcontracts had been let or would be let. The record discloses the following questions and answers:

"Q. You say here under this setup, there will be no labor subcontracts let? A. That's right.

"Q. That is your final statement? A. That is correct.

"Q. Made before the picket was placed on this job? A. That's correct."

To support plaintiff's contention as to the secondary boycott, he relies upon the following cases: National Labor Relations Board v. Denver Bldg. & Const. Trades Council, 71 S. Ct. 943, 341 U.S. 675, International Brotherhood of Electrical Workers, Local 501, A.F. of L. et al. v. National Labor Relations Board, 341 U.S. 694, 71 S. Ct. 954, 95 L. Ed. 1299, Local 74, United Brotherhood of Carpenters & Joiners of America, A.F. of L. et al. v. National Labor Relations Board, 341 U.S. 707, 71 S. Ct. 966, 95 L. Ed. 1309.

In the Denver case, supra, the National Labor Relations Board found that the subcontractor employed only non-union men on the project involved. The Trades Council placed pickets and withdrew all crafts from the work. The union claimed it had a labor dispute with the original contractor only. The court, however, approving the findings of the Board, held that the labor organization committed an unfair labor practice within the secondary boycott provision of the National Labor Relations Act by engaging in a strike, an object

of which was to force the general contractor on a construction project to terminate its contract with a subcontractor on the project. In the Local 74, United Brotherhood of Carpenters & Joiners of America case, supra, the union ordered a strike to compel the owner to cancel an installation contract of a supplier of floor covering, who employed non-union men. The court approved the Board's finding of the existence of a secondary boycott in reliance upon the court's finding and holding in the Denver case, supra.

In the International Brotherhood of Electrical Workers, Local 501, A.F. of L. et al. case, supra, we find that this case was affirmed upon the court's holding in the Denver case, supra. The decision in the Denver case was based upon the finding of the National Labor Relations Board, which was approved by the Supreme Court, that the union had engaged in a secondary boycott.

The finding in the instant case is to the effect that the defendants did not engage in a secondary boycott, which finding is supported by the plaintiff's evidence that he did not enter into any labor subcontracts prior to the picketing of the building, and his further statement that he did not intend to enter into such subcontracts.

From a review of the entire record, we are of the opinion that the injunction was properly denied. The judgment of the trial court is affirmed.

HALLEY, V. C. J., and CORN, DAVISON, and BINGAMAN, JJ., concur.